Gerrit M. Pronske
Texas Bar No. 16351640
Brandon J. Tittle
Texas Bar No. 24090436
**PRONSKE & KATHMAN, P.C.**
2701 Dallas Parkway, Suite 590
Plano, Texas 75093
Telephone: 214.658.6500
Facsimile: 214.658.6509
Email: gpronske@pronskepc.com
Email: btittle@pronskepc.com

**COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 19-32841-hdh** |
| **DOUGHERTY'S HOLDINGS, INC.,** *et al.*,[1] | § | |
| | § | **Chapter 11** |
| Debtors. | § | **Jointly Administered** |

### DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE FOR (I) APPROVAL OF BID PROCEDURES FOR THE SALE OF THE DEBTORS' PHARMACIES, (II) AUTHORIZATION TO USE THE ASSET PURCHASE AGREEMENT IN CONNECTION THEREWITH, AND (III) TO SET RELATED AUCTION AND HEARING DATES

TO THE HONORABLE HARLIN D. HALE
UNITED STATES BANKRUPTCY JUDGE:

Dougherty's Holdings, Inc., ("Holdings") and its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby file this motion (the "Motion") for approval of procedures for the sale of the Debtors' Pharmacies (defined below) and respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtors' federal tax identifications number, are as follows: Dougherty's Holdings, Inc. (4393), Dougherty's Pharmacy, Inc. [Texas] (3187), Dougherty's Pharmacy Forest Park, LLC (6490); Dougherty's Pharmacy McAlester, LLC (1758); Dougherty's Pharmacy, Inc [Delaware] (0905). The mailing address for the Debtors, solely for purposes of notices and communications, is: 5924 Royal Lane, Suite 250, Dallas, Texas 75230, with copies to Pronske & Kathman, P.C., c/o Brandon J. Tittle, 2701 Dallas Parkway, Suite 590, Plano, Texas 75093.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory authorities for the relief requested herein in are Sections 105(a) and 363(b) of the Bankruptcy Code.[2]

## BACKGROUND

**A.     The Debtors.**

3. On August 28, 2019 (the "Petition Date"), the Debtors each commenced a cash by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Northern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

5. After opening in 1929, the Debtors own and operate two retail pharmacy stores in Dallas, Texas and one in McAlester, Oklahoma. A beloved Dallas institution, the Debtors are the area's oldest, largest, and most-recognized full-service pharmacy serving customers across Texas. The retail stores are approximately 2,500 – 12,000 square feet in size, and offer health screenings, serves prescription needs, offers wellness and holistic care products, health & beauty products, home medical supplies and equipment, and gifts for sale.

---

[2] 11 U.S.C. §§ 101 *et. seq.*

6. Due in part to a decrease in prescriptions being filled, increased competition from national pharmacy chains, increased operating expenses and overhead, downward pricing pressure from insurance providers carriers, and a decrease in reimbursements for higher priced prescriptions, the Debtors do not have sufficient liquidity to continue their business outside the protection of this Court and have been forced to seek relief pursuant to chapter 11 of the Bankruptcy Code.

**B.      The Marketing Process.**

7. Prior to the Petition Date, the Debtors engaged in an extensive marketing process and worked to maximize value and market the Debtors' pharmacies located at 5959 Royal Ln #515, Dallas, Texas 75230, 6090 Campbell Road, Suite 100, Dallas, Texas 75248, and 622 E Wyandotte Ave., McAlester, Oklahoma 74501 (collectively, the "Pharmacies") in the greatest way possible. CVS Pharmacy, Walgreens Pharmacy, and Kroger were among the parties that the Debtors reached out to regarding the sale of the Pharmacies.

8. The Debtors have drafted a template asset purchase agreement for potential purchasers to utilize in submitting their bids.

## RELIEF REQUESTED

9. By this Motion, the Debtors seeks entry of an order (the "Bid Procedures Order"):

(a)   approving procedures (the "Bid Procedures") as set forth in **Exhibit A** for (i) submitting bids for the purchase of the Pharmacies, and (ii) conducting an auction (the "Auction") with respect to the Pharmacies if the Debtors receive two or more Qualified Bids for the Pharmacies;

(b)   approving the Asset Purchase Agreement (the "APA") with the Purchaser, in the form attached hereto as **Exhibit B** for the purpose of establishing a minimum acceptable bid at which to begin the Auction;

(c)   providing that if only one Qualified Bid is timely received by Bid Deadline (as that term is defined herein), the Debtors will not conduct an Auction and instead shall present the sole Qualified Bid to the Court for approval at a hearing on [**January**

    **17, 2020 at _:_ _.m. (CST)],** or such other date the Court may set to consider approval of the relief sought in the Sale Motion (the "Approval Hearing");

(e)   providing that, should a Qualified Bid be timely received, an Auction shall take place on **January 10, 2020 at 2:00 p.m. (CST)**, or at such other date, time and location determined by the Court at any hearing on this Motion and providing the procedures governing any Auction, as incorporated in the Bid Procedures attached hereto as **Exhibit A**;

(f)   setting **January 15, 2020 at 12:00 p.m. (prevailing Central Time)** (the "Sale Motion Objection Deadline") as the deadline by which parties must object to the Sale Motion, including the proposed amounts necessary to cure any defaults for executory contracts or unexpired leases;

(g)   providing that the Court shall consider at the Approval Hearing either (a) the Stalking Horse Bid if no other Qualified Bids are timely received or (b) the best bid selected by the Debtors pursuant to the Bid Procedures; and

(h)   approving the form of notice, in the form attached hereto as **Exhibit C,** of the Approval Hearing, the Sale Motion Objection Deadline, and the proposed amount necessary to cure any defaults under any assumed and assigned executory contracts and unexpired leases.

## FOREST PARK PHARMACY TO BE SOLD

10.   The Debtors seek authority to auction and sell the Pharmacies free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against in accordance with section 363 of the Bankruptcy Code, which will include the following:

  (a)   all Inventory;

  (b)   all Accounts Receivable;

  (c)   all Prescription Files, Records, and Data;

  (d)   all Compounding Lab Equipment;

  (e)   all Assumed Contracts; and

  (f)   all Goodwill.

11.   Debtors intend to file in the near future its Motion Pursuant to Sections 105(a), 363,

and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 Approving the Sale of Debtors' Pharmacies (the "Sale Motion"), in which the Debtors seek to sell the Pharmacies to the Purchaser, or alternatively to the Successful Bidder (as defined herein).

## BID PROCEDURES

**A.     Bid Procedures.**

12.     In order to maximize the value of the Pharmacies, the Debtors seek to implement a competitive bidding process for the sale of the Pharmacies. To govern the competitive bidding process, the Debtors intend to implement the Bid Procedures attached hereto as **Exhibit A.**

13.     Among other things, the Bid Procedures require that a bid must: (1) work from the APA, attached hereto as **Exhibit B**; (2) identify the officer(s) or authorized agent(s) who will appear at the Auction on behalf of such bidder; (3) provide evidence, satisfactory to the Debtors and Debtors' counsel, in their reasonable discretion, of the bidder's financial wherewithal and operational ability to consummate the proposed transaction; (4) include a statement of which, if any, executory contracts and unexpired leases it desires to assume at closing; (5) include a Good Faith Deposit of $175,000; (6) provide a statement that such Bidder's offer is irrevocable until the earlier of February 28, 2020 or consummation of a transaction involving any other bidder; and (7) a statement that such Bidder shall not request nor be entitled to any break-up fee, expense reimbursement or similar type of payment. Only bids that meet all the requirements listed above shall be considered a "Qualified Bid." The Debtors believe that the Bid Procedures are appropriate and that a sale conducted pursuant to their terms will produce the highest and best bid for the Debtors and their estates in connection with the sale.

14.     The Debtors further believe that the Bid Procedures provide an appropriate framework for selling the Pharmacies in a uniform fashion and will enable the Debtors to review,

analyze, and compare all bids received to determine which bid(s) are in the best interests of the Debtors, their estates, and creditors. **THE BID OF ANY BIDDER FAILING TO COMPLY WITH THE BIDDING PROCEDURES SHALL NOT BE ACCEPTED WITHOUT THE DEBTORS' CONSENT.**

**B.     The Auction**

15.     If more than one Qualified Bid is received prior to the Bid Deadline (as defined herein below), the Debtors propose to hold an auction on **January 10, 2020 at 2:00 p.m. (CST)** at the offices of Pronske & Kathman, P.C., 2701 Dallas Parkway, Suite 590, Plano, Texas 75093, or such other location, date and time as may be determined by the Court and entered in the Bid Procedures Order. Only a bidder who submits a Qualified Bid (as defined in the Bid Procedures) by the Bid Deadline may participate at the Auction.

16.     If one or less Qualified Bid is timely received, the Debtors will <u>NOT</u> conduct an Auction and instead may present the sole Qualified Bid to the Court for approval at the Approval Hearing on [**January 17, 2019 at _:_ _.m. (CST)**], or such other date the Court may order.

17.     Subject to the Bid Procedures, if there are at least two Bidders that submit a Qualified Bid, the Debtors will accept bids on account of the Pharmacies. Bidding will continue with respect to the Auction until the Debtors determine that they have received the highest and best bid for the Pharmacies. The Debtors will then determine and announce, at the Auction, which bid has been determined to be the highest and best bid (the "<u>Successful Bid</u>"). The Debtors will also announce the "Backup Bid," which bid has been determined to be the second highest and best bid. The Debtors will then close the auction. The successful bidder (the "<u>Successful Bidder</u>") will be required, if hasn't already done so, to enter into a definitive agreement, which shall be subject to approval of the Court at the Approval Hearing.

18. In determining the Successful Bid and Backup Bid the Debtors will use their business judgment.

**C.  Notice Procedures.**

19. <u>Sale Notice</u>:  As soon as approved by the Court, the Debtors will immediately serve notice of the Auction and Approval Hearing (the "<u>Sale Notice</u>") by first class mail on: (i) the Master Service List attached to this Motion; (ii) Creditor Matrix; (iii) the parties that have filed proofs of Claim in these Cases at the addresses set forth therein; (iv) all parties that have requested notice and/or filed a notice of appearance in this case; (v) each of the entities that signed NDAs, including each of the entities that submitted letters of intent as of the filing of this Motion; and (viii) counsel for any other Bidder as of that date (collectively, the "<u>Sale Notice Parties</u>"). A proposed form of the Sale Notice is attached hereto as **Exhibit C.**

20. <u>Assumption Notice</u>:  In accordance with Bankruptcy Rule 2002, the Debtors must provide notice of the (i) potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (ii) the maximum amounts that the Debtors may pay to cure any defaults (collectively, the "<u>Cure Amounts</u>"), and (iii) the deadline to file objections to such assumption and assignment, maximum Cure Amounts, the existence of any defaults, and/or adequate assurance of future performance. Thus, the Debtors propose to include within, and attached to, the Sale Notice, a list of potential executory contracts and unexpired leases that may be assumed and assigned by the Debtors (the "<u>Desired 365 Contracts</u>"), along with maximum Cure Amounts related to each executory contract and unexpired lease and information as to the party or counterparty to each contract or lease. Due to complexities that often arise related to these types of amounts, the Debtors propose to (i) pay all valid and undisputed Cure Amounts as provided in the cure notices, and/or (ii) establish a cash reserve to satisfy disputed Cure Amounts upon

approval by the Court. Furthermore, the Debtors submit that the information contained in the Sale Notice, including the exhibit thereto, (a) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors, and (b) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (ii) the maximum amount and manner offered to satisfy the Cure Amounts, (iii) the deadline to file objections to such assumption and assignment, applicable Cure Amounts, and the existence of any defaults and/or adequate assurance of future performance, and (iv) the Approval Hearing.

21. <u>Information Provided to Interested Parties</u>: The Debtors have either provided or will provide to all Bidders that have either expressed an interest in purchasing the Pharmacies or whom the Debtors believe may have an interest in purchasing the Pharmacies (each an "<u>Interested Party</u>" and, collectively the "<u>Interested Parties</u>"), certain information in connection with the proposed Sale, including, among other things, the proposed Bid Procedures and the APA. Should any Interested Party desire additional or further information, such Interested Party will be required, to the extent it has not already done so, to enter into a confidentiality and non-disclosure agreement satisfactory to the Debtors in their business judgment. Upon execution of the confidentiality agreement, the Interested Parties will be given access to other relevant and confidential information.

22. <u>Good Faith Deposit</u>: Bidders will be required to submit good faith deposits (the "<u>Good Faith Deposits</u>") with the Debtors on or before **January 9, 2020 at 5:00 p.m. CST)** (the "<u>Bid Deadline</u>"). Such Good Faith Deposit shall be equal to $175,000. Good Faith Deposits of all Bidders shall be held in Debtors' counsel's IOLTA Trust Account for the Debtors' benefit until the consummation of a transaction involving any other bidder for the Pharmacies. If the Successful

Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become the property of the Debtors without affecting or reducing any of the Debtors' other rights or claims against such party. All other deposits will be returned to the respective Bidders within fourteen (14) days after closing.

## OBJECTIONS AND RELATED PROCEDURES

23. The Debtors request the following procedures be implemented with respect to the notices and relief requested herein:

    a. Objections, if any, to the Sale Motion and/or the proposed assumption and assignment of the Desired 365 Contracts and rights thereunder, including but not limited to objections relating to any Cure Amounts, the existence of any defaults, and/or adequate assurances of future performance, must (a) be in writing, (b) state with specificity the nature of such objection, (c) if concerning a Cure Amount, set forth a specific default in the Desired 365 Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Debtors in the Sale Notice (with appropriate documentation in support thereof), (d) comply with the Federal Rules of Bankruptcy Procedure, and (e) be filed with this Court and served upon the following parties in accordance with the Sale Notice on or before **January 15, 2020 at 12:00 p.m. (CST):** (i) counsel for the Debtors at Pronske & Kathman, P.C., Attn: Brandon J. Tittle, 2701 Dallas Parkway, Suite 590, Plano, Texas 75093, (fax) 214-658-6509, btittle@pronskepc.com, (ii) counsel for the DIP Lender, Cardinal Health 110, LLC, Attn: Scott Zuber, Chiesa, Shahinian & Giantomasi, PC, One Boland Drive, West Orange, NJ 07052, szuber@csqlaw.com, and Mark H. Ralston, Fishman Jackson Ronquillo PLLC, 13155 Noel Road, Suite 700, Dallas, Texas 75240, mralston@fjrpllc.com, and (iii) counsel for the Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Suite 976, Dallas, Texas 75242, nancy.s.resnick@usdoj.gov.

    b. The Debtors are authorized to amend the Sale Notice by amending the Cure Amounts at any time at least five (5) calendar days prior to the Approval Hearing by sending a new or amended Sale Notice; *provided, however,* that counterparties to any Desired 365 Contracts whose Cure Amounts are amended shall have at least five (5) calendar days from service of the Amended Sale Notice to properly object to such amendment to the Cure Amount. The Debtors are authorized to amend the Sale Notice by adding or deleting Desired 365 Contract at any time prior to the Approval Hearing, and they shall use commercially reasonable

efforts to affect the assumption and assignment of any such added Desired 365 Contract; *provided, however*, that counterparties to any such added Desired 365 Contracts shall have at least five (5) calendar days from service of the amended Sale Notice to property object to the assumption and assignment of their respective Desired 365 Contract and rights thereunder and the applicable Cure Amount.

        c.      Any Person (as defined in section 101 of the Bankruptcy Code) failing to timely file an objection to the Sale Motion shall be forever barred from objection to the Sale Motion, including the transferring of the Debtors' rights, title, and interest in, to and under substantially all of the Debtors' Forest Park Pharmacy in accordance with the Asset Purchase Agreement or substantially similar definitive agreement free and clear of any and all liens, encumbrances, claims and other interest except as otherwise set forth in the Asset Purchase Agreement or other substantially similar definitive agreement, and will be deemed to consent to the Sale.

        d.      Any person failing to file an objection to any Cure Amounts set forth in the Sale Notice or the proposed assumption and assignment of the Debtors' rights, title and interest in, to and under Desired 365 Contracts shall be forever barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting any defaults exist under the Desired 365 Contracts as of the date of assumption) against either of the Debtors, their estates, the Potential Buyer or any of their respective affiliates (or such other Person that agrees to purchase the Forest Park Pharmacy that is approved by the Bankruptcy Court) with respect to its Desired 365 Contract arising prior to assumption and assignment of the Debtors; right, title and interest in, to and under the Desired 365 Contract and will be deemed to consent to the proposed assumption and assignment of the Desired 365 Contract and rights thereunder by such Sale.

## ASSET PURCHASE AGREEMENT AND BREAK-UP FEE

24.    The Debtors believe that to establish a baseline template and agreement by which to consider and judge all bids, the Debtors will work from the terms of the APA, substantially in the form attached hereto as **Exhibit B**.

25.    Any Bidder who wishes to submit a competing bid must work from the APA attached as **Exhibit B** as a form and provided that the conditions to closing of the mark-up APA version must make it not materially more contingent than the APA. The Debtors will not consider any bid that is not a mark-up of the Asset Purchase Agreement.

**BASIS FOR RELIEF REQUESTED**

A.     **The Bid and Auction Procedures Should be Approved.**

26.    The Court should approve the Bid Procedures and Auction because they were determined using good business judgment. Bid procedures determined using good business judgment should be approved. *See In re The Bombay Co., Inc.*, Case No. 07-44084-dml-11, 2007 Bankr. LEXIS 3218, at * 12 (Bankr. N.D. Tex. Sept. 26, 2007) ("The principal question the court thus faces is whether management of the Debtor in fact exercised good business judgment."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Once a valid business justification is articulated, a presumption of reasonableness arises in favor of the Debtor. *See In re Johns-Manville Corp.,* 60 B.R. 615-616 (Bankr. S.D.N.Y. 1986). Courts often show great deference to a debtor's decision making in the context of applying the "business judgment" rule. *See Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981).

27.    The Bid Procedures contemplated herein will ensure that the consideration paid for the Pharmacies (a) is fair and reasonable, (b) is the highest and best offer, (c) will address the Debtors' secured debts, and return a significant dividend to unsecured creditors, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code. In light of the foregoing, the Sale of the Pharmacies pursuant to the proposed Bid Procedures constitutes a sound business decision.

28.    The Bid Procedures will ensure that the bidding process with respect to the Auction is fair and reasonable and will yield the maximum value for the Debtors' estates and creditors. In addition, the Bid Procedures set deadlines for conducting an Auction and holding a hearing with respect to the Sale. As such, the Court should approve the Bid Procedures.

### WAIVER OF BANKRUPTCY RULE 6004(h)

29. In order successfully implement the foregoing, and to move towards the Bid Deadline and Auction in the most expeditious way possible, the Debtors seek a waiver of the fourteen (14) day stay under Federal Rule of Bankruptcy Procedure 6004(h).

### NOTICE

30. No trustee has been appointed in these Chapter 11 Cases. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (iii) counsel to the prepetition secured lenders; and (iv) each of the parties listed on the attached Master Service List.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 21, 2019.                    Respectfully submitted,

*/s/ Brandon J. Tittle*
Gerrit M. Pronske
Texas Bar No. 16351640
Brandon J. Tittle
Texas Bar No. 24090436
**PRONSKE & KATHMAN, P.C.**
2701 Dallas Parkway, Suite 590
Plano, Texas 75093
Telephone: 214.658.6500
Facsimile: 214.658.6509
Email: gpronske@pronskepc.com
Email: btittle@pronskepc.com

**COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on November 21, 2019, I caused to be served the foregoing pleading upon the parties on the Master Service List attached hereto via electronic and/or United States mail, first class delivery, and also via ECF email upon all parties accepting such service.

*/s/ Brandon J. Tittle*
Brandon J. Tittle