## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 19-32841-hdh** |
| **DOUGHERTY'S HOLDINGS, INC.,** *et al.*,[1] | § | |
| | § | **Chapter 11** |
| Debtors. | § | **Jointly Administered** |

---

## JOINT CHAPTER 11 PLAN OF REORGANIZATION
## FOR DOUGHERTY'S HOLDINGS, INC., ET AL.

---

| | |
|---|---|
| **PRONSKE & KATHMAN, P.C** | **KANE RUSSELL COLEMAN LOGAN PC** |
| Brandon J. Tittle (TX Bar No. 24090436) | John J. Kane (TX Bar No. 24066794) |
| Gerrit M. Pronske (TX Bar No. 16351640) | Bank of America Plaza |
| 2701 Dallas Parkway, Ste. 590 | 901 Main St., Ste. 5200 |
| Plano, TX 75093 | Dallas, TX 75202 |
| **COUNSEL TO THE DEBTORS** | **COUNSEL TO OSK VII, LLC** |

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtors' federal tax identifications number, are as follows: Dougherty's Holdings, Inc. (4393), Dougherty's Pharmacy, Inc. [Texas] (3187), Dougherty's Pharmacy Forest Park, LLC (6490); Dougherty's Pharmacy McAlester, LLC (1758); Dougherty's Pharmacy, Inc [Delaware] (0905). The mailing address for the Debtors, solely for purposes of notices and communications, is: 5924 Royal Lane, Suite 250, Dallas, Texas 75230, with copies to Pronske & Kathman, P.C., c/o Brandon J. Tittle, 2701 Dallas Parkway, Suite 590, Plano, Texas 75093.

# TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS** ...................................................................................1
    1.1    Definitions.......................................................................................2

**ARTICLE II. RULES OF CONSTRUCTION AND INTERPRETATION** ..............13
    2.1    Rules of Construction ...................................................................13
    2.2    Governing Law ............................................................................13

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS** ....................13
    3.1    Administrative Claims and Priority Tax Claims........................13
    3.2    Classes of Claims and Interests...................................................13
    3.3    Controversy Concerning Classification, Impairment or Voting Rights.....14
    3.4    Nonconsensual Confirmation........................................................14

**ARTICLE IV. TREATMENT OF UNCLASSIFIED CLAIMS**...............................14
    4.1    Administrative Expense Claims....................................................14
    4.2    Professional Compensation and Reimbursement Claims ...................15
    4.3    Allowed Priority Tax Claim........................................................15
    4.4    Payment of Statutory Fees and Post-Petition Date Taxes........................15

**ARTICLE V. TREATMENT OF CLAIMS AND EQUITY INTERESTS** ................16
    5.1    Class 1:  Allowed Secured Tax Claims.......................................16
    5.2    Class 2:  Allowed Troy Phillips Secured Superpriority Administrative Expense Claim. ........................................................16
    5.3    Class 3:  Allowed Cardinal Health Secured Superpriority Administrative Expense Claim. ........................................................16
    5.4    Class 4:  Allowed Secured Claim of Cardinal Health................................17
    5.5    Class 5: Allowed OSK Secured Superiority Administrative Expense Claim.........................................................17
    5.6    Class 6:  Allowed Secured Claim of OSK. ...................................18
    5.7    Class 7: General Unsecured Claims.............................................18
    5.8    Class 8: Holders of Allowed Interests in the Debtors................................18

**ARTICLE VI. EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS** ..................................................................................19
    6.1    Impaired Classes to Vote ............................................................19
    6.2    Acceptance by Class of Claimants...............................................19
    6.3    Reservation of Cramdown Rights.................................................19

**ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN** ...................19
    7.1    Debtors, Continued Operations, and Capitalization ...................19
    7.2    Operations Between the Confirmation Date and Effective Date ...............19
    7.3    Restructuring Transactions ..........................................................20
    7.4    Release of Liens...........................................................................20
    7.5    Directors and Officers of the Reorganized Debtor .....................20
    7.6    Post-Effective Date Plan Implementation....................................21

| | | |
|---|---|---|
| 7.7 | Exemption from Certain Taxes and Fees | 21 |
| 7.8 | D&O Liability Insurance Policies | 21 |
| 7.9 | Settlement of Claims and Controversies | 21 |
| 7.10 | Vesting of Assets and Substantive Consolidation | 22 |
| 7.11 | Sources of Cash for Plan Distributions | 22 |
| 7.12 | Approval of Agreements | 22 |
| 7.13 | Entry of Final Decree | 22 |
| 7.14 | Retention of Causes of Action and Insurance Claims | 23 |

**ARTICLE VIII. THE LITIGATION TRUST** ......23

| | | |
|---|---|---|
| 8.1 | Formation of the Litigation Trust | 23 |
| 8.2 | Formation of the Litigation Trust Committee | 23 |
| 8.3 | Approval by the Litigation Trust Committee | 24 |
| 8.4 | Treatment of the Litigation Trust for Federal Income-Tax Purposes | 24 |
| 8.5 | General Powers of the Litigation Trustee | 25 |
| 8.6 | Obligations of the Litigation Trustee | 26 |
| 8.7 | Resignation/Removal of the Litigation Trustee | 27 |
| 8.8 | Appointment of Successor Litigation Trustee | 27 |
| 8.9 | Litigation Trustee Settlement Authority | 27 |
| 8.10 | Bonding of Litigation Trustee | 27 |
| 8.11 | Post-Confirmation Operating Reports | 27 |
| 8.12 | Payment of Fees and Expenses to the Litigation Trustee | 28 |
| 8.13 | Operation of the Litigation Trust Committee | 28 |
| 8.14 | Rights and Duties of the Litigation Trust Committee | 28 |
| 8.15 | Approval by the Litigation Trust Committee | 29 |
| 8.16 | Establishment of Disputed Claim Reserve | 29 |
| 8.17 | Investments | 29 |
| 8.18 | Limitation on Liability of Litigation Trustee and Litigation Trust Committee Members | 29 |
| 8.19 | Indemnification of Litigation Entities | 29 |
| 8.20 | Retention of Rights to Pursue Causes of Action and Effectuate Setoffs, Recoupments, Etc. | 30 |
| 8.21 | Cooperation and Access to Books and Records | 30 |

**ARTICLE IX. DISTRIBUTIONS UNDER THE PLAN** ......30

| | | |
|---|---|---|
| 9.1 | Delivery of Distributions | 30 |
| 9.2 | Unclaimed Distributions and Uncashed Checks | 31 |
| 9.3 | Due Authorization by Claimants | 31 |
| 9.4 | Setoffs | 31 |
| 9.5 | Additional Charges | 32 |
| 9.6 | Compliance with Tax Requirements | 32 |
| 9.7 | De Minimis Distributions | 32 |
| 9.8 | Rounding | 32 |

**ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ......32

| | | |
|---|---|---|
| 10.1 | Assumption of Executory Contracts and Unexpired Leases | 32 |
| 10.2 | Payments Related to Assumption of Executory Contracts | 33 |

    10.3    Claims Based on Rejection of Executory Contracts of Unexpired Leases 33

**ARTICLE XI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ..............33
    11.1    Objections to Claims ................................................................33
    11.2    Contingent Claims ...................................................................33
    11.3    Post-Confirmation Proofs of Claim and Amendments ............................34
    11.4    Settlement of Disputed Claims .....................................................34

**ARTICLE XII. CONDITIONS PRECENT** ....................................................34
    12.1    Conditions Precedent to Confirmation ...........................................34
    12.2    Conditions Precedent to the Effective Date .....................................35

**ARTICLE XIII. EFFECTS OF CONFIRMATION** ...........................................35
    13.1    Binding Effect .......................................................................35
    13.2    Discharge of Claims and Termination of Interests .............................35
    13.3    Release by the Debtors ............................................................36
    13.4    Release – Post-Petition Acts .....................................................36
    13.5    Release – Certain Officers ........................................................36
    13.6    Good Faith and Protection of Certain Parties in Interest ......................37
    13.7    Injunction ............................................................................37
    13.8    Litigation Trust Plan Indemnification ............................................38
    13.9    Insurance .............................................................................38

**ARTICLE XIV. RETENTION OF JURISDICTION** .........................................39
    14.1    Retention of Jurisdiction ..........................................................39
    14.2    Limitation on Jurisdiction and Authority ........................................41
    14.3    No New Requirements .............................................................41

**ARTICLE XV. MISCELLANEOUS PROVISIONS** ..........................................41
    15.1    Authorization .......................................................................41
    15.2    Amendment of the Plan ...........................................................41
    15.3    Non-Confirmation of the Plan .....................................................41
    15.4    Filing of Additional Documentation ..............................................41
    15.5    Governing Law .....................................................................42
    15.6    Headings ............................................................................42
    15.7    Severability .........................................................................42
    15.8    All Claims and Equity Interests ..................................................42
    15.9    Computation of Time ...............................................................42
    15.10   Section 1125(e) Good-Faith Compliance .........................................42
    15.11   No Stay of Confirmation Order ...................................................42
    15.12   Notices ..............................................................................42
    15.13   U.S. Trustee Fees ..................................................................43
    15.14   Confirmation Order .................................................................44

## LIST OF EXHIBITS

**Exhibit A**:    Causes of Action

**Exhibit B**:    Assumed Contracts and Cure Schedule

**Exhibit C**:    OSK Secured Term Note

**Exhibit D**:    Litigation Trust Agreement

# INTRODUCTION

Dougherty's Holdings, Inc. et al., the Debtors[2] and debtors-in-possession, in the above-captioned jointly administered Chapter 11 Cases, and OSK, hereby propose the following Plan pursuant to § 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. The Debtors and OSK are the joint proponents of the Plan within the meaning of § 1129 of the Bankruptcy Code.

This Plan constitutes a chapter 11 reorganization plan for the Debtors. In summary, the Plan provides for the Debtors to restructure their debts by dramatically reducing the amount of secured claims against the Debtors' Estates. OSK is purchasing the Debtors' equity and injecting additional working capital into the Debtors in order to fund ongoing operations. The Debtors' former equity interests will be cancelled and reissued for the benefit of OSK, as necessary for OSK to obtain full direct and indirect control of the Debtors. To implement this Plan, OSK will also fund initial costs and expenses of a Litigation Trust, which the Debtors and OSK will vest with the Causes of Action defined below. After the Effective Date of the Plan, the Litigation Trust will be tasked with liquidating the Causes of Action for the benefit of Trust Beneficiaries, which include, but are not limited to, Holders of Allowed General Unsecured Claims. The Debtors and OSK believe that the Plan will ensure Holders of Allowed Claims will receive greater distributions under the Plan than they would if the Debtors' Chapter 11 Cases were converted to Chapter 7 and the Debtors' Assets liquidated by a Chapter 7 Trustee.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, as co-proponents, the Debtors and OSK expressly reserve the right to alter, amend, or modify the Plan one or more times before its confirmation, for the resolution of its outstanding Claims and Equity Interests, without prejudice to any Holders of Claims, Equity Interests or other parties in interest to object to same.

All Holders of Claims against, and Equity Interests in, the Debtors are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.

NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE DEBTORS' HISTORY, THE HISTORY OF THE DEBTORS' BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT ANY OTHER PARTY.

## ARTICLE I.
## DEFINITIONS

---

[2] Capitalized terms shall have the meanings ascribed to them in Article I of the Plan.

**1.1** **Definitions**.

As used in the Plan, the following terms shall have the respective meanings specified below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction and Interpretation set forth in the following Articles of this Plan. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

"**Administrative Expense Claim**" means a Claim for payment of an administrative expense of a kind specified in §§ 503(b), 507(b), and 1114(e)(2) of the Bankruptcy Code and referred to in § 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred on or after the Petition Date for preserving the Estates of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtors incurred on or after the Petition Date but prior to the Effective Date, any indebtedness or obligations incurred or assumed by the Estates in connection with the conduct of the Debtors' business on or after the Petition Date and prior to the Effective Date, any Professional Fee Claim, all fees and charges assessed against the Estates under Chapter 123, Title 28, United States Code, and any Claim granted administrative-expense priority status by Final Order. For purposes of clarification, Class 2, 3 and 5 Claims are separately treated under this Plan and shall not be deemed Administrative Expense Claims.

"**Administrative Expense Claim Bar Date**" is February 28, 2020.

"**Administrative Expense Claim Objection Deadline**" shall be thirty (30) days after the Effective Date unless such date is extended by the Bankruptcy Court upon motion filed with the Bankruptcy Court on or prior to such date.

"**Allowance Date**" means the date on which a Claim is Allowed.

"**Allowed**" means a Claim or Equity Interest that: (a) is listed in the Schedules in a liquidated, non-contingent, and undisputed known amount, but only if no proof of Claim or proof of Equity Interest is filed with the Bankruptcy Court to evidence such Claim or Equity Interest on or before the Bar Date and no objection thereto has been timely filed; (b) is evidenced by a proof of Claim or proof of Equity Interest filed on or before the Bar Date, but only if no objection to the allowance of the Claim or Equity Interest or no motion to expunge the proof of Claim or Equity Interest has been timely filed; (c) is allowed by a Final Order; or (d) is otherwise allowed pursuant to the terms of the Plan. Notwithstanding any other provision of the Plan, the term Allowed in reference to any Claim shall not include any Claim or Equity Interest held by any Claimant or purported Equity Interest Holder against whom the Debtors or the Litigation Trustee has asserted a Cause of Action by filing an objection or complaint/ petition with a court of competent jurisdiction. No Allowed Claim or Equity Interest shall include any penalty or any interest accrued after the Petition Date, except as otherwise provided herein

"**Assets**" means all asset of the Debtors' Estates as of the Effective Date, including "property of the Estates" as described in § 541 of the Bankruptcy Code, including, without limitation, all right, title, and interest in and to all Cash and any Avoidance Action or other Causes

of Action that the Debtors or their Estates may have as of the Effective Date or any time thereafter.

**"Avoidance Actions"** means any cause of action commenced, or that that may be commenced before or after the Effective Date, pursuant to §§ 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, including, without limitation, the D&O Claims such actions that arise under state law for fraudulent conveyance and other similar avoidance actions..

**"Ballot"** means the form or forms that will be distributed along with the Disclosure Statement to Holders of Allowed Claims in Classes that are Impaired under the Plan and entitled to vote, which the Holders of Impaired Claims may use to vote to accept or reject the Plan.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under section 2075, Title 28, United States Code, as applicable to the Chapter 11 Case, together with the Local Rules of the Bankruptcy Court.

**"Bar Date"** means the last date on which proofs of Claim may be timely filed against the Debtors unless otherwise extended by Final Order of the Bankruptcy Court, which is January 2, 2020 for all claimants.

**"Beneficiaries"** means all individuals and entities entitled to Distributions from the Litigation Trust under the Plan.

**"Business Day"** means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**"Cardinal Health"** means, collectively, all subsidiaries, related, and affiliated companies of Cardinal Health, Inc., an Ohio corporation, and successors or assigns thereof, whether existing now or in the future, including but not limited to ParMed Pharmaceuticals, LLC.

"**Cardinal Health Secured Superpriority Administrative Expense Claim**" means the debt owed by the Debtors to Cardinal Health as evidenced by that certain *Debtor-in-Possession Financing Term Sheet* dated as of October 7, 2019 [Dkt. No. 80], approved by Order of the Bankruptcy Court dated October 11, 2019 [Dkt. No. 86], in the principal amount of $300,000 and which (a) accrued interest at the rate of 10% per annum, (b) was secured by automatically perfected priming liens on substantially all of the Debtors' prescription-related Assets, and (c) holds a priority over all other Administrative Expense Claims, except the OSK Secured Superpriority Administrative Expense Claim and certain carve-outs provided under the forgoing *Debtor-in-Possession Financing Term Sheet*.

**"Cash"** means Cash and cash equivalents.

**"Causes of Action"** means any action, cause of action, suit, account, controversy,

agreement, promise, right to legal remedy, right to equitable remedy, right to payment, and claim, including Avoidance Actions, whether known or unknown, reduced to judgment, not not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including, without limitation: (a) any claim or right to recover damages (general, exemplary, or otherwise) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, (v) unjust enrichment, suit on a sworn account, accounting, quantum meruit, restitution, (vi) malpractice, (vii) breach of contract, (viii) conversion, (ix) recharacterization, (x) alter ego, aiding and abetting, conspiracy, *respondeat superior*, or other vicarious or secondary liability claims relating to all of the aforementioned claims, or (xi) any other claim of the Debtors against any party, to the extent not specifically compromised or released pursuant to the Plan, or a Final Order entered by the Bankruptcy Court after notice and opportunity for hearing; (b) any claims of the Debtors for subordination under § 510 of the Bankruptcy Code or under other applicable laws; (c) any objection to any Disputed Claim that includes as a basis any counterclaim by the Debtors or the Estates for affirmative relief, and is pending and not resolved by Final Order as of the Effective Date, together with all liability of the Debtors or the Estates on account of such Disputed Claims; and (d) all claims and defenses asserted by the Debtors or the Litigation Trustee, as the case may be, in a contested matter or an adversary proceeding or other civil litigation. Causes of Action also specifically include: (i) Avoidance Actions, including the D&O Causes of Action, (ii) all tort and common law claims held by the Debtors against any person, including, without limitation, the following: (a) Persons that were or are joint venturers or partners with, or controlling persons of, the Debtors, (b) Governmental Units, including taxing authorities, (c) Holders of Equity Interests; and (iii) all claims held by the Debtors whether in contract, tort, or statutory law against current or former: (a) customers, (b) Claimants, (c) officers, managers, members, and directors, (d) suppliers (including any person with whom the Debtors ever did business), (e) employees, (f) managers and affiliates, (g) insurers (including, without limitation, for directors and officers liability coverage, business interruption, or similar claims), and (h) professionals used by the Debtors. For the avoidance of doubt, but without limitation, the Causes of Action include, but are not limited to, the causes of action against the persons listed on **Exhibit A** to the Plan. Causes of Action expressly *exclude* all claims and causes of action of the Debtors against any insurer or other person in any way related to damage incurred or claims arising from that certain tornado or tornadoes occurring in the Fall of 2019.

> **"Chapter 11 Case(s)"** or **"Case"** means Debtors' bankruptcy cases commenced by the filing of voluntary petitions for relief for the Debtors on August 28, 2019, under chapter 11 of the Bankruptcy Code, now jointly administered under Case No. 19-32841 pending before Judge Hale, in the Bankruptcy Court.

> **"Claim"** means any right to payment from the Debtors or their Estates or the D&O Liability Insurance Policies, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy against the Debtors or their Estates for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, known or unknown or as otherwise within the definition of

"claim" as set forth in § 101(5) of the Bankruptcy Code

**"Claimant"** means a Person holding a Claim against a Debtor, property of the Debtor, the Estates, or any Asset.

**"Claims Objection Deadline"** shall be one hundred and eighty (180) days after the Effective Date, unless such date is extended by the Bankruptcy Court upon motion filed with the Bankruptcy Court by the Litigation Trustee on or prior to such date.

**"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to § 1122 of the Bankruptcy Code.

**"Class 7 General Unsecured Claim"** means a Claim against a Debtor, other than the Cardinal Health Secured Superpriority Administrative Expense Claim, the OSK Secured Superpriority Administrative Expense Claim, the Troy Phillips Secured Superpriority Administrative Expense Claim, any Administrative Expense Claim, Priority Tax Claim, Secured Tax Claim, OSK Secured Claim, Other Secured Claim, Other Priority Claim, or Equity Interest, but shall include the Deficiency Claims described in Sections 5.4 and 5.6, below.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Collateral"** means any property or interest in property of the Estates that is subject to a Lien to secure the payment or performance of a Claim, which such Lien is not avoided, subject to avoidance under the Bankruptcy Code, or other applicable law or otherwise invalid under the Bankruptcy Code or applicable law.

**"Confirmation"** means the entry of the Confirmation Order on the docket in the Chapter 11 Case.

**"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the Order of the Bankruptcy Court, and any amendment thereto, confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**"Contingent Claim"** means a Claim for which the Debtors' legal duty to pay does not come into existence until triggered by the occurrence of a future event.

**"D&O Claims"** shall mean any and all Claims and Causes of Action for damages arising from any act or omission by any current or former officer, director, member, or manager of the Debtors, including but not limited to misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty, breach of duty of care, breach of duty of obedience, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil *RICO* claims.

"**D&O Insurance Recoveries**" shall mean: (a) the right to pursue and receive the benefits and/or the proceeds of the D&O Liability Insurance Policies; (b) the right to pursue and receive recovery from or as a result of any D&O Claims, including but not limited to consequential, contractual, extracontractual, and/or statutory damages, or other proceeds, distributions, awards or benefits; and (c) the right to pursue and receive any other recovery related to the D&O Claims.

"**D&O Liability Insurance Policies**" means all unexpired directors', managers', members' and officers' liability insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, members, officers, and employees of the Debtors, including but not limited to the *Public Solution Insurance Policy* issued by Great American Insurance Company, referenced as Policy No. DOLE0691.

"**Debtors**" means any of Dougherty's Holdings, Inc. (Texas corporation), Dougherty's Pharmacy, Inc., Dougherty's Pharmacy Forest Park, LLC, Dougherty's Pharmacy McAlester, LLC, each a Debtor and Debtor-in-Possession in the Chapter 11 Cases. The Definition of Debtors in this Plan expressly *excludes* Dougherty's Pharmacy, Inc., a Delaware corporation, referred to in this Plan as Dougherty's Delaware, which filed for bankruptcy relief under Case No. 19-32845.

"**Debtor-in-Possession**" means any of the Debtors in its capacity as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

"**Deficiency Claim**" means any portion of a Secured Claim (a) to the extent the value of the Collateral securing such Claim is less than the amount of such Claim or (b) to the extent the amount of the Claim that is secured by a right of setoff is less than the amount of such Claim, each as determined pursuant to § 506(a) of the Bankruptcy Code.

"**Disallowed**" means a Claim or Equity Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the Holder of the Claim or Equity Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which no proof of Claim or proof of Equity Interest has been filed or deemed filed with the Bankruptcy Court by the Bar Date or pursuant to either the Bankruptcy Code or a Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or Equity Interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

"**Disclosure Statement**" means the Disclosure Statement with respect to the Plan filed by the Debtors with the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as may be amended and supplemented.

"**Disputed Claim**" means the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been filed or deemed filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the Claim Objection Deadline, a Claim shall be considered a Disputed Claim: (a) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding

Claim scheduled by the Debtors in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by the Debtors has been scheduled as disputed, contingent, or unliquidated in its Schedules; (c) in its entirety, if no corresponding Claim has been scheduled by the Debtors in its Schedules; or (d) such Claim is otherwise objectionable.

"**Disputed Claim Reserve**" means the amount of Cash held by the Litigation Trustee following the Effective Date in reserve for Litigation Trust Expenses and, in the reasonable discretion of the Litigation Trustee, amounts that are or are expected to become due and owing by the Litigation Trust on or following the Effective Date, including, without limitation, amounts that may become payable on account of Disputed Claims, and any expenses that, in the reasonable discretion of the Litigation Trustee, are likely to become Litigation Trust Expenses, such as (a) any litigation expenses, and reasonable legal fees related thereto, of the Litigation Trust or the Litigation Trustee; (b) funds that the Litigation Trust is holding as Unclaimed Property; and (c) the costs of filing tax returns and other reports that the Litigation Trustee may be required to file.

"**Distribution**" means the property distributed to the Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Bankruptcy Code.

"**Distribution Date**" means as to all Claims and Equity Interests, the date that is within thirty (30) days after the dates on which the Litigation Trustee determines, in his or her sole and absolute discretion, that sufficient Available Cash exists to (a) pay, in whole or in part, Allowed Claims of the highest priority of previously unpaid Claims; (b) pay expenses applicable to the Litigation Trust; and (c) deposit sufficient funds in the Reserves. The Distribution Date shall be after the Effective Date.

"**Dougherty's Delaware**" means Dougherty's Pharmacy, Inc., a Delaware corporation, which filed for bankruptcy relief under Case No. 19-32845. Dougherty's Delaware is the sole Holder of Equity Interests in Dougherty's Holdings, Inc. Under this Plan, Dougherty's Holdings, Inc.'s Equity Interests will terminate, and be reissued to and for the sole benefit of OSK. Dougherty's Delaware shall have no ownership interest in or claims against the Reorganized Debtors, OSK, or any of their parents, affiliates, successors, assigns, employees, officers, directors, agents, or professionals.

"**Effective Date**" means the first Business Day date on which the conditions to the Effective Date identified in the Plan have been satisfied or waived and is the date on which the Plan becomes effective.

"**Entity**" means an entity as such term is defined in § 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any ownership interest in the Debtors represented by shares of stock, or membership or partnership interest in the Debtors, including, to the extent provided by applicable law, any warrant, option, or other security to acquire any of the foregoing in the Debtors.

"**Estates**" means the bankruptcy Estates created on the filing of the Chapter 11 Cases pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"**Face Amount**" means (i) as to a Disputed Claim, the full stated amount claimed by the

Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (ii) as to an Allowed Claim, the full stated amount of such Claim claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the Holder of such Claim and the Debtor.

"**Final Distribution**" means a Distribution made by the Litigation Trustee, which represents the last Distribution to be made to a particular Class of Claimants.

"**Final Distribution Date**" means the date on which the Litigation Trustee makes a Final Distribution.

"**Final Order**" means an order or judgment under 28 U.S.C. § 158(a)(1) of the Bankruptcy Court or other court having jurisdiction over any matter that (a) has not been reversed, stayed, or vacated, (b) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and no such action has occurred, or (c) if a timely appeal is filed, upon completion of the appellate process either through the expiration of an initial deadline for invoking further appellate jurisdiction or, if in the United States Supreme Court, through the issuance of that Court's final decision; *provided*, *however*, no order shall fail to be a Final Order because of the possibility that a motion pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (and Bankruptcy Rules 9023 and 9024, respectively) may be filed to that order.

"**Governmental Unit**" means a governmental unit as such term is defined in § 101(27) of the Bankruptcy Code.

"**Holder**" means any Entity holding a Claim or an Equity Interest.

"**Indemnification Obligations**" means each of the Debtors' indemnification obligations for the current and former directors, managers, members, and officers of the Debtors, whether set forth in the Debtors' bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts, remaining after exhaustion or the unavailability of coverage under any and all D&O Liability Insurance Policies, including any Side A coverage thereunder.

"**Impaired**" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Injunction Beneficiaries**" means the Injunction Beneficiaries as defined in Section 13.7 of the Plan.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation, including, but not limited to, a mortgage, deed-of-trust lien, security interest, judicial lien, judgment lien, pledge, encumbrance, or writ of attachment.

"**Litigation Trust Beneficiaries**" means the Cardinal Secured Superpriority Administrative Expense Claim and all Holders of Allowed General Unsecured Claims.

"**Litigation Trust Committee**" means the Litigation Trust Committee established on the Effective Date pursuant to this Plan. The Litigation Trust Committee will consist of the following members: [Cardinal] + _____. The Litigation Trust Committee will be responsible for overseeing the prosecution of Causes of Action vested in the Litigation Trust and the administration of the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries.

"**Litigation Trust**" means the Litigation Trust established on the Effective Date pursuant to this Plan. The Litigation Trust shall consist of the Litigation Trustee and Litigation Trust Committee, and shall be conveyed, as of the Effective Date, the Litigation Trust Assets.

"**Litigation Trust Agreement**" means the Litigation Trust Agreement approved by the Bankruptcy Court and effective on the Effective Date. The Litigation Trust Agreement shall, among other things, (a) identify the Litigation Trustee, (b) enumerate the duties and obligations of the Litigation Trustee and Litigation Trust Committee, and (c) provide for the terms under which the Litigation Trustee is to be compensated.

"**Litigation Trust Assets**" means the Litigation Trust Fund, the D&O Insurance Policies, the D&O Insurance Recoveries, and the Causes of Action. The Litigation Trust Assets shall be conveyed through the Confirmation Order by the Debtors to the Litigation Trust on the Effective Date.

"**Litigation Trust Expenses**" means the actual and anticipated reasonable ordinary costs and expenses of the Litigation Trustee in performing its duties as set forth in this Plan, the Litigation Trust Agreement, and the Confirmation Order, including (a) the compensation to the Litigation Trustee for services rendered, and (b) payment of or reimbursement of the Litigation Trustee for any and all costs, expenses (including fees and expenses of the Litigation Trustee's respective professionals and any quarterly fees owed to the U.S. Trustee), and all liabilities incurred by the Litigation Trustee in connection with the performance of its duties.

"**Litigation Trust Fund**" means $15,000 paid by OSK to the Litigation Trust on the Effective Date to be used to fund the initial operations of the Litigation Trust and to pay Litigation Trust Expenses incurred by the Litigation Trust. The Litigation Trust shall be repaid to OSK from the first Litigation Trust Net Proceeds pari passu with the repayment of the Tail Policy Fund to Cardinal Health, and prior to the Litigation Trustee's distribution of any Litigation Trust Net Proceeds to any other Allowed Claimant. The debt arising out of the funding of the Litigation Trust Fund shall arise upon the actual funding and OSK shall not be required to file any application or motion seeking allowance of that debt.

"**Litigation Trust Net Proceeds**" means any proceeds of the Litigation Trust Assets after payment of all Litigation Trust Expenses.

"**Litigation Trustee**" means the person or entity chosen to manage and administer the Litigation Trust in accordance with the Plan, in its capacity as trustee of the Litigation Trust. Entry of the Confirmation Order shall constitute the approval of Litigation Trustee as a professional person pursuant to the applicable provisions of the Bankruptcy Code. The Litigation Trustee shall conduct the final liquidation of the Litigation Trust Assets and cause the distribution of the

Litigation Trust Net Proceeds to Beneficiaries of the Litigation Trust in accordance with the terms and conditions of this Plan and the Litigation Trust Agreement.

"**Order**" Any order, mandate, precept, command, or direction formally given or entered by court of competent jurisdiction.

"**OSK Secured Term Note**" means that certain Secured Term Note by and between the Reorganized Debtors and OSK attached hereto as **Exhibit C**, and secured by all of the Assets of the Reorganized Debtors.

"**OSK Secured Superpriority Administrative Expense Claim**" means the debt owed by the Debtors to OSK as evidenced by that certain *Debtor-in-Possession Credit Facility Preliminary Term Sheet* filed with the Bankruptcy Court on January 24, 2020 [Dkt. No. 148] and approved by Order of the Bankruptcy Court dated January 31, 2020 [Dkt. No. 152], in the principal amount of up to $600,000 and which (a) accrued interest at the rate of 16% per annum, and (b) holds a priority over all other Administrative Expense Claims, except certain carve-outs provided under the forgoing *Debtor-in-Possession Credit Facility Preliminary Term Sheet.*

"**Other Priority Claim**" means any Claim against a Debtor, other than an Administrative Expense Claim or Priority Tax Claim, entitled to priority in payment under § 507(a) of the Bankruptcy Code.

"**Other Secured Claim**" means any Secured Claim other than a Secured Tax Claim and the OSK Secured Claim.

"**Penalty Claim**" means any Claim, secured or unsecured, priority or non-priority, arising before the Petition Date, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Claimant.

"**Person**" means as identified in § 101(41) of the Bankruptcy Code and includes an individual, corporation, partnership, joint venture, association, limited liability company, limited liability partnership, trust, Estates, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

"**Petition Date**" means August 28, 2019, the date on which the Debtors filed their voluntary chapter 11 petitions commencing their respective Chapter 11 Cases.

"**Plan**" means this Joint Chapter 11 Plan of Reorganization for Dougherty's Holdings, Inc. et al., as it may be amended or modified.

"**Plan Document**" means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

"**Plan Supplement**" means the documents, including the Litigation Trust Agreement, that shall be contained in a separate submission filed with the Clerk of the Bankruptcy Court at least seven (7) days prior to the date on which the Confirmation Hearing shall commence or such shorter period as ordered by the Bankruptcy Court. The Plan Supplement may be reviewed via the

Bankruptcy Court's ECF docket for this Chapter 11 Case, or requested in writing from the Debtors' counsel.

**"Post-Confirmation Service List"** means a list of parties-in-interest to whom post-confirmation service of process shall be provided. The Post-Confirmation Service List shall be limited, and shall consist of only (a) the Debtors, (b) Cardinal Health, (c) the Litigation Trustee, (d) members of the Litigation Trust Committee, (e) the United States Trustee, (f) any party who after entry of the Confirmation Order files a request for such notice with the Clerk, and (g) counsels/attorneys of records of the parties identified in (a) – (f).

**"Priority Tax Claim"** means a Claim of a Governmental Unit entitled to priority in payment as specified in §§ 502(i) and 507(a)(8) of the Bankruptcy Code, but excluding any portion of such Claim that is a Secured Tax Claim.

**"Professional Fee Claim"** means an Administrative Expense Claim under §§ 330(a), 331, or 503 of the Bankruptcy Code for compensation of a professional or other Person for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date under §§ 327, 328, or 1103 of the Bankruptcy Code.

**"Proof of Claim" or "Proof of Interest"** means a proof of claim or proof of interest, as the case may be, filed with the Bankruptcy Court with respect to the Debtors pursuant to § 501 of the Bankruptcy Code and Bankruptcy Rules 3001, 3002, or 3003 in accordance with the various orders of the Bankruptcy Court.

**"Proponents"** means the Debtors and OSK.

**"Pro Rata"** means the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class or if distribution is to multiple Classes of equal priority, the aggregate amount of all Allowed Claims in such Classes.

**"Reorganized Debtors"** means the post-Effective Date Debtors owned directly or indirectly by OSK.

**"Reserves"** means the Disputed Claim Reserve and any funds held therein.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by or on behalf the Debtors in their Chapter 11 Cases pursuant to § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

**"Secured Claim"** means a Claim, if any, that is (a) secured by a valid, perfected and enforceable Lien under applicable state law or by reason of a Final Order on property in which one or more Debtor's Estate has an interest to the extent of the value of such property, or (b) subject to a permissible setoff under § 553 of the Bankruptcy Code, to the extent of such permissible setoff, in each case, as determined in accordance with § 506(a) of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Holder of such Claim.

**"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of *ad*

*valorem* taxes that is secured by property of any Debtor or its Estate.

"**Tail Policy Fund**" means the amount funded by Cardinal Health to finance the Debtors' acquisition of a tail policy relating to the D&O Insurance Policies. The Tail Policy Fund shall be repaid to Cardinal Health from the first Litigation Trust Net Proceeds *pari passu* with the repayment of the Litigation Trust Fund to OSK, and prior to the Litigation Trustee's distribution of any Litigation Trust Net Proceeds to any other Allowed Claimant. The debt arising out of the funding of the Tail Policy Fund shall arise upon the actual funding and Cardinal Health shall not be required to file any application or motion seeking allowance of that debt.

"**Troy Phillips Secured Superpriority Administrative Expense Claim**" means the debt owed by the Debtors to Troy Phillips, as evidenced by that certain *Debtor-in-Possession Financing Term Sheet* dated as of October 7, 2019 [Dkt. No. 80], approved by Order of the Bankruptcy Court dated October 11, 2019 [Dkt. No. 86], in the principal amount of $200,000 and which (a) accrued interest at the rate of 10% per annum, (b) was secured by automatically perfected priming liens on substantially all of the Debtors' Assets other than certain prescription-related Assets, and (c) holds a priority over all other Administrative Expense Claims, except the OSK Secured Superpriority Administrative Expense Claim, the Cardinal Health Secured Superpriority Administrative Expense Claim, and certain carve-outs provided under the forgoing *Debtor-in-Possession Financing Term Sheet*.

"**Unclaimed Property**" means any funds payable by the Litigation Trust to holders of Claims that are unclaimed. Unclaimed Property shall include: (a) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address; (b) funds for checks that have not been presented and paid within ninety (90) days of their issuance; (c) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to mail or deliver such property; and (d) checks (and the funds represented thereby) that are not mailed due to a lack of required tax identification information, but only following two mailed requests to the address of record of the prospective recipient for such tax identification information.

"**Unimpaired**" A Claim or Equity Interest that is not Impaired.

"**Unsecured Claim**" means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under § 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the holder's interest in a Debtor's Estate's interest in the Property securing such Claim is less than the amount of the Claim (including the deficiency claims related to Class 4 and Class 6 Claims), or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to § 506(a) of the Bankruptcy Code.

All terms not expressly defined herein shall have the respective meanings given to such terms in § 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply. Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an individual or Entity as a Holder of a Claim or Equity Interest includes that individual's or Entity's successors, assigns and affiliates.

## ARTICLE II.
## RULES OF CONSTRUCTION AND INTERPRETATION

**2.1** **Rules of Construction**. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. Captions, articles, and section headings in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. Any phrase containing the term "include" or "including" means including without limitation without the necessity of repeating same in each instance. The rules set forth in § 102 of the Bankruptcy Code shall apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this Article of the Plan.

A capitalized term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code. A capitalized term used in this Plan and not defined herein or in the Bankruptcy Code but is defined in the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Rules.

**2.2** **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements; in which case, the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors not incorporated in Texas shall be governed by the laws of the state or province of incorporation of that Debtor or those Debtors.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to § 1122 of the Bankruptcy Code, and for the purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims against and all Interests in the Debtors shall be classified as set forth in this Article III.

**3.1** **Administrative Claims and Priority Tax Claims**. As provided in § 1123(a) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified; they are therefore excluded from the Classes of Claims and Interests set forth below.

**3.2** **Classes of Claims and Interests**. A Claim or Interest is in a particular Class only to the extent the Claim or Interest is an Allowed Claim or Allowed Interest. For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative and Priority Tax Claims) and Interests shall be classified as follows:

| Class | Type of Allowed Claim or Interest | Treatment | Status |
|-------|-----------------------------------|-----------|--------|
| 1 | Allowed Secured Tax Claims | Cash Distribution | Unimpaired. Deemed to Accept. |
| 2 | Allowed Troy Phillips Secured Superpriority Administrative Expense Claim | Cash Distributions | Unimpaired. Deemed to Accept. |
| 3 | Allowed Cardinal Health Secured Superpriority Administrative Expense Claim | Liens released, deferred payment, Litigation Trust beneficiary | Impaired. Entitled to Vote. |
| 4 | Allowed Secured Claim of Cardinal Health | Cram-Down Cash Distribution | Impaired. Entitled to Vote. |
| 5 | Allowed OSK Secured Superpriority Administrative Expense Claim | Conversion to Term Note | Impaired. Deemed to Accept. |
| 6 | Allowed Secured Claim of OSK | Restated Cram-Down Note | Impaired. Deemed to Accept. |
| 7 | Allowed General Unsecured Claims | Distributions from Creditor Trust | Impaired. Entitled to Vote. |
| 8 | Allowed Equity Interests in the Debtors | Terminated, equity reissued for sole benefit of OSK. | Impaired. Deemed to Reject. |

**3.3** **Controversy Concerning Classification, Impairment or Voting Rights**. If a controversy or dispute should arise involving issues related to the classification, impairment or voting rights with respect to any Claim or Equity Interest, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, rule on the controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim if the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Case.

**3.4** **Nonconsensual Confirmation**. If any Class of Claims is determined to be Impaired by the Bankruptcy Court, and if such Impaired Class of Claims votes not to accept the Plan by the requisite statutory majority required by § 1126(c) of the Bankruptcy Code, the Proponents reserve the right to: (a) reclassify any Claim, including reclassifying any Impaired Claim as Unimpaired; (b) amend the Plan; or (c) ask the Bankruptcy Court to confirm the Plan under § 1129(b) of the Bankruptcy Code.

## ARTICLE IV.
## TREATMENT OF UNCLASSIFIED CLAIMS

**4.1** **Administrative Expense Claims**.

**4.1.1** Time for Filing Administrative Expense Claims. On February 6, 2020, the Debtors filed their *Emergency Motion for Entry of an Order (I) Fixing Bar Date for Filing Certain Post-Petition Administrative Expense Claims and (II) Approving the Form and Manner of Notice of the Bar Date* (the "**Bar Date Motion**") [Dkt. No. 157]. On _____ the Bankruptcy Court entered an Order approving the Bar Date Motion and setting **March 13, 2020 at 4:00 pm CT** as the deadline for parties to file all requests for payment of Administrative Expense Claims other than certain "Excluded Claims" as defined in the Bar Date Motion. Any Administrative Expense Claim—other than an Excluded Claim—for which an application or request was not filed by the Administrative Claim Bar Date is released and forever barred, and shall not be entitled to any Distribution

of any kind or character under this Plan. The Plan shall constitute adequate and proper notice of such deadline. Such an application or request for such Administrative Expense Claim must include, at a minimum, (a) the name of the Holder of the Claim, (b) the amount of the Claim, (c) the basis for the Claim, (d) a detailed statement as to why such Claim is not subject to the Administrative Expense Claim Bar Date, and (e) all documents supporting such Claim. The United States Trustee is not required to file an application for the allowance of an Administrative Expense Claim with regards to fees due in accordance with 28 U.S.C. § 1930(a)(6).

       **4.1.2**   <u>Treatment of Administrative Expense Claims</u>**.** Except to the extent that any Person entitled to payment of an Administrative Expense Claim agrees otherwise, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) shall, in full and final satisfaction of any Administrative Expense Claim, receive Cash in amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of: (a) the Effective Date and (b) the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided*, *however*, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors up to and including the Effective Date may be paid at any time in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

       **4.2**   **Professional Compensation and Reimbursement Claims**. All requests for allowance and payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Post-Confirmation Service List no later than thirty (30) days after the Effective Date. Any such Professional Fee Claim for which an application or request for payment is not filed with the Bankruptcy Court within that time period shall be released and forever barred, and shall not be entitled to Distributions under the Plan. Objections to the payment of such Professional Fee Claims must be filed no later than seven (7) days prior to the hearing on such Professional Fee Claims. All Professional Fee Claims shall be paid in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, as well as any prior Orders entered by the Bankruptcy Court. No Professional Fee Claim shall be Allowed on account of services rendered or expenses incurred by a professional prior to the Effective Date unless payment for such services and expenses has been allowed and approved by the Bankruptcy Court.

       **4.3**   **Allowed Priority Tax Claim**. Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, and unless otherwise agreed to in writing by the Proponents and the Holder, each Holder of an Allowed Priority Tax Claim shall be paid in an amount equal to the unpaid portion of such Allowed Priority Tax Claim following the later to occur of: (a) the Effective Date and (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim.

       **4.4**   **Payment of Statutory Fees and Post-Petition Date Taxes**. Notwithstanding anything herein, all fees payable pursuant to 28 U.S.C. § 1930 and all Claims of a Governmental Unit of the type described in § 503(b)(1)(B)-(C) of the Bankruptcy Code that were filed prior to the Administrative Claim Bar Date shall be treated as Allowed Administrative Expense Claims when such amounts become due and payable by the Debtors under applicable non-bankruptcy law.

The dates on which those claims become due shall be their Allowance Date.

## ARTICLE V.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**5.1    Class 1:  Allowed Secured Tax Claims**.

**5.1.1**    Impairment and Voting.  Class 1 is Unimpaired under the Plan.  Class 1 shall include only the Secured Tax Claim(s).  Each Holder of a Class 1 Claim is presumed to have accepted the Plan.

**5.1.2**    Claim and Lien Determination.  Until paid in full, each Holder of a Class 1 Claim that is an Allowed Claim shall retain its Lien in the Collateral that secured the Class 1 Claim on the Petition Date in the same priority as existed on the Petition Date.  The amount, validity, extent, value, and priority of each Class 1 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtors and the Holder of a Class 1 Claim.

**5.1.3**    Treatment.  Each Class 1 Claim that is an Allowed Claim shall be satisfied, at the Reorganized Debtors' option, in full satisfaction, release, and discharge of and exchange for such Claim, by (a) payment in full of the Allowed Claim on the Effective Date or (b) retention of all applicable liens until payment in full of the Allowed Claim in monthly installments for a period of five (5) years at 12% interest, or other applicable legal rate in accordance with § 1129(a)(9)(D) of the Bankruptcy Code.

**5.2    Class 2:  Allowed Troy Phillips Secured Superpriority Administrative Expense Claim**.

**5.2.1**    Impairment and Voting.  Class 2 is Unimpaired under the Plan.  Class 2 shall include only the Allowed Troy Phillips Secured Superpriority Administrative Expense Claim.  Troy Phillips, the only Holder of an Allowed Class 2 Claim, is presumed to have accepted the Plan.

**5.2.2**    Claim and Lien Determination. The Troy Phillips Secured Superpriority Administrative Claim shall be Allowed in the full amount of the outstanding balance owed by the Debtors under the DIP facility described in Section 1.1 of the Plan. On the Effective Date of the Plan, OSK will pay the Troy Phillips Secured Superpriority Administrative Expense Claim in full and final satisfaction of all amounts due thereunder.

**5.2.3**    Release of Liens.  Notwithstanding anything in this Plan to the contrary, all Liens and Claims held by the Holder of the Class 2 Claim shall be released on the Effective Date of the Plan.

**5.3    Class 3:  Allowed Cardinal Health Secured Superpriority Administrative Expense Claim**.

**5.3.1**    Impairment and Voting.  Class 3 is Impaired under the Plan.  Class 3 shall include only the Allowed Cardinal Health Secured Superpriority Administrative Claim of

Cardinal Health. Cardinal Health, the only Holder of a Class 3 Claim, is entitled to vote on the Plan.

**5.3.2** Claim and Lien Determination. The Cardinal Health Secured Superpriority Administrative Expense Claim shall be Allowed in the full amount of the outstanding balance owed by the Debtors under the DIP facility described in Section 1.1 of the Plan and shall continue to accrue interest at the contract rate until paid in full from Litigation Trust Net Proceeds. .

**5.3.3** Treatment. On the Effective Date of the Plan, the Cardinal Health Secured Superpriority Administrative Expense Claim shall be become a claim against and obligation of the **Litigation** Trust with priority of recovery from Litigation Trust Net Proceeds superior to any other Allowed Claim other than, first, OSK's right to recover the amount of the Litigation Trust Fund from the Litigation Trust Net Proceeds and, second, Cardinal Health's right to recover any additional funds loaned or otherwise provided by Cardinal Health to the Litigation Trust to fund the operations of the Litigation Trust.

**5.3.4** Release of Liens. Notwithstanding anything in this Plan to the contrary, all Liens held by Cardinal Health as a Holder of a Class 3 Claim shall be released on the Effective Date of the Plan.

## 5.4 **Class 4: Allowed Secured Claim of Cardinal Health**.

**5.4.1** Impairment and Voting. Class 4 is Impaired under the Plan. Class 4 shall include only the Allowed Secured Claim of Cardinal Health. Cardinal Health, the only Holder of a Class 4 Claim, is entitled to vote on the Plan.

**5.4.2** Claim and Lien Determination. Cardinal Health asserts a $6,587,977.23 claim against the Debtors' Estates, secured by a properly perfected lien against substantially all of the Debtors' Assets. The priority of Cardinal Health's Secured Claim is modified by that certain Lien Subordination Agreement by and between, in pertinent part, Cardinal Health and OSK.

**5.4.3** Treatment. On the Effective Date of the Plan, Cardinal Health shall be paid $750,000 in cash by OSK in full and final satisfaction of its Allowed Secured Claim. Cardinal Health shall retain a Class 7 Allowed General Unsecured Claim for its deficiency in the amount of $5,837,977.23.

**5.4.4** Release of Liens. Notwithstanding anything in this Plan to the contrary, all Liens held by Cardinal Health as a Holder of a Class 4 Claim shall be released upon Cardinal Health's receipt of OSK's $750,000 payment on the Effective Date of the Plan.

## 5.5 **Class 5: Allowed OSK Secured Superiority Administrative Expense Claim**.

**5.5.1** Impairment and Voting. Class 5 is Impaired under the Plan. Class 5 shall include only the Allowed DIP Financing Claim of OSK. OSK, the only Holder of a Class 5 Claim, is deemed to Accept the Plan as a Plan proponent.

**5.5.2** <u>Claim and Lien Determination</u>. The OSK Superpriority Administrative Expense Claim shall be Allowed in the full amount of the outstanding balance owed by the Debtors under the OSK DIP facility described in Section 1.1 of the Plan.

**5.5.3** <u>Treatment</u>. On the Effective Date of the Plan, the OSK Superpriority Administrative Expense Claim shall be converted and included in the OSK Secured Term Note owed by the Reorganized Debtors to OSK pursuant to the terms and conditions of the attached **Exhibit C**.

**5.6** **Class 6:  Allowed Secured Claim of OSK**.

**5.6.1** <u>Impairment and Voting</u>. Class 6 is Impaired under the Plan. Class 6 shall include only the Allowed Secured Claim of OSK. OSK, the only Holder of a Class 6 Claim, is deemed to Accept the Plan as a Plan proponent.

**5.6.2** <u>Claim and Lien Determination</u>. OSK asserts a $4,275,038.81 claim against the Debtors' Estates, secured by a properly perfected lien against substantially all of the Debtors' Assets. The priority of OSK's Secured Claim is modified by that certain Lien Subordination Agreement by and between, in pertinent part, Cardinal Health and OSK.

**5.6.3** <u>Treatment</u>. On the Effective Date of the Plan, OSK shall convert $3,000,000 of its Secured Claim into the OSK Secured Term Note. The OSK Secured Term Note shall be secured by automatically and properly perfected liens on all of the Reorganized Debtors' Assets. OSK shall retain a Class 7 Allowed General Unsecured Claim for its deficiency in the amount of $1,275,038.81.

**5.7** **Class 7: General Unsecured Claims**.

**5.7.1** <u>Impairment and Voting</u>. Class 7 is Impaired under the Plan. Class 7 shall include all General Unsecured Claims. Holders of Class 7 Claims are entitled to vote on the Plan

**5.7.2** <u>Treatment</u>. On the Effective Date of the Plan, Allowed Class 7 Claims shall become Beneficiaries of the Litigation Trust, and shall become entitled to their pro-rata share of Distributions from the Litigation Trust of Litigation Trust Net Proceeds, following the satisfaction of first, OSK's right to recover the amount of the Litigation Trust Fund from the Litigation Trust Net Proceeds, second, Cardinal Health's right to recover any additional funds loaned or otherwise provided by Cardinal Health to the Litigation Trust to fund the operations of the Litigation Trust and, third, Cardinal Health's Allowed Class 3 Claim.

**5.8** **Class 8: Holders of Allowed Interests in the Debtors**.

**5.8.1** <u>Impairment and Voting</u>. Class 8 is Impaired under the Plan. Class 8 shall include all Interests in the Debtors. Holders of Allowed Class 8 Interests are not entitled to a Distribution under the Plan and are therefore deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code.

**5.8.2** <u>Treatment</u>. On the Effective Date of the Plan, the Debtors shall take all actions necessary to cancel and discharge all Interests in the Debtors and reissue all such interests for the sole benefit of OSK so that OSK or any of its designees shall directly or indirectly own 100% of the Reorganized Debtors' Interests or otherwise, in OSK's sole discretion and at OSK's sole direction.

## ARTICLE VI.
## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**6.1** **Impaired Classes to Vote**. Each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan. Unless otherwise provided by the Plan, a Holder of a Disputed Claim that has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Schedules.

**6.2** **Acceptance by Class of Claimants**. A Class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

**6.3** **Reservation of Cramdown Rights**. If any Impaired Class fails to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Proponents reserve the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1** **Debtors, Continued Operations, and Capitalization**. From and after the Effective Date, the Debtors will continue to exist as Reorganized Debtors owned directly or indirectly by OSK or its designee. OSK is obtaining ownership of the Debtors through the payment of not less than $1,350,000 to the Debtors to fund the Debtors' successful reorganization. That $1,350,000 consists of $950,000 paid by OSK to satisfy Class 2 and Class 4 Claims on the Effective Date of the Plan, and $400,000 of cash paid by OSK into the Reorganized Debtors to fund ongoing operations as the Reorganized Debtors exit bankruptcy. As a result of the Plan, the Reorganized Debtors will reduce their secured debt from approximately $11 million to approximately $3.6 million as evidenced by the OSK Secured Term Note. The reduction of debts and appropriate capitalization of the Reorganized Debtors by OSK will allow the Reorganized Debtors to successfully operate following the Effective Date of the Plan.

**7.2** **Operations Between the Confirmation Date and Effective Date**. During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as a debtor-in-possession for the benefit of OSK or its designee, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect. In addition, the Debtors may take all actions as may be necessary or appropriate to implement the terms and conditions of the Plan. Upon Confirmation of the Plan, all actions required of the Debtors to effectuate the Plan shall be deemed authorized and approved in all respects. All matters provided

for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors (as applicable) shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by and consistent with the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors.  The authorizations and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law.  The issuance of any new Interests in the Debtors shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

7.3     **Restructuring Transactions**.  On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

7.4     **Release of Liens**.  On the Effective Date of the Plan, and upon payment by OSK of amounts owed to Holders of Class 2 and Class 4 Claims, the Holders of Class 2, Class 3, and Class 4 Claims shall deliver to the Reorganized Debtors any Collateral or other property of the Debtors held by such Claimant, together with any termination statements, instruments of satisfaction, or releases of all security interests, liens, claims, and encumbrances with respect to any Assets of the Debtors or Reorganized Debtors, that may be reasonably required to terminate any related financing statement, mortgage, lien, or *lis pendens*, or similar interests or documents. The Reorganized Debtors are authorized to file any such UCC-3 Termination Statement as may be necessary to fulfill the terms of this Section.

7.5     **Directors and Officers of the Reorganized Debtor**.  As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire, and the initial board of directors of the Reorganized Debtors shall be appointed in accordance with corporate documents prepared by or for the benefit of OSK or its designee as the direct or indirect owner of the Reorganized Debtors.  Pursuant to § 1129(a)(5) of the Bankruptcy Code, the initial board of directors for the Reorganized Debtors will be _____.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the

aforementioned corporate documents and other constituent documents of the Reorganized Debtor. Stewart Edington and Shumit Patel shall remain officers of the Reorganized Debtors, subject to the terms and conditions of new employment agreements executed on or after the Effective Date of the Plan.

**7.6** **Post-Effective Date Plan Implementation**.  On and after the Effective Date, the Reorganized Debtors and the officers and members of the new board of directors are authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the interests issued to or for the benefit of OSK pursuant to the Plan, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan

**7.7** **Exemption from Certain Taxes and Fees**.  Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed-of-trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

**7.8** **D&O Liability Insurance Policies**.  On the Effective Date of the Plan, (a) notwithstanding anything contained in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant to section 365(a) of the Bankruptcy Code, and (b) all of the Debtors' rights and interests in the D&O Liability Insurance Policies shall be assigned, transferred and conveyed to the Litigation Trust, and the Reorganized Debtors shall be released from any obligations under such policies, including Indemnification Obligations, arising as of or after the Effective Date, with the Litigation Trust assuming any and all such obligations, except as otherwise provided herein. The Reorganized Debtors shall obtain new D&O liability insurance policies. Notwithstanding the assumption and assignment of the D&O Liability Insurance Policies, upon the Effective Date, Confirmation of the Plan shall constitute a discharge and release of the Reorganized Debtors and the Litigation Trust from any Indemnification Obligations imposed under the D&O Liability Insurance Policies.  The Debtors shall convert the current D&O Liability Insurance Policies to a tail policy for a two-year term commencing as of the Effective Date, with the costs of such tail policy to be paid by application of all refunded or credited pre-paid insurance premiums on the D&O Liability Insurance Premiums and the Tail Policy Fund.

**7.9** **Settlement of Claims and Controversies**. Pursuant to § 1123(b)(3)(A) of the

Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for all Distributions under the Plan and other benefits provided under this Plan, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Distribution under the Plan on account of thereof. If the Confirmation Order is not entered or the Effective Date does not occur, the Debtors reserve their rights with respect to all disputes resolved and settled under this Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each compromise and settlement embodied in the Plan, and the Bankruptcy Court's finding that all such compromises and settlements are (a) in the Debtors' and their Estates' best interests and (b) fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions are mutually dependent.

**7.10** **Vesting of Assets and Substantive Consolidation**. On the Effective Date, except as otherwise expressly provided herein, title to all Assets—other than Causes of Action—shall remain/vest in the Reorganized Debtors, as applicable, free and clear of all liens, Claims, Causes of Action, interests, rights, security interests, and other encumbrances and without further order of the Bankruptcy Court. All of the Debtors' Causes of Action shall vest in the Litigation Trust and shall be substantively consolidated for all purposes under this Plan. All Holders of Allowed Class 3 and Class 7 Claims shall seek payment of their Allowed Claim solely from the Litigation Trust Net Proceeds. Holders of Allowed Class 7 Claims shall be paid pro-rata from any such Litigation Trust Net Proceeds—after the satisfaction of all claims with a higher payment priority including all Allowed Class 3 Claims—regardless of the Debtor against which the Holder of the Allowed Class 7 Claim initially asserted the Claim.

**7.11** **Sources of Cash for Plan Distributions**. On the Effective Date, OSK shall pay all cash Distributions to Holders of Allowed Class 1, Class 2, and Class 4 Claimants. OSK shall also fund the Litigation Trust Fund. Thereafter, the Litigation Trust shall use the Litigation Trust Fund to liquidate or otherwise monetize all vested Causes of Action, and shall use the Litigation Trust Net Proceeds to fund any Distributions to Holders of Allowed Class 3 and Class 7 Claims in accordance with the payment priority set forth in the Bankruptcy Code.

**7.12** **Approval of Agreements**. The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Supplement Documents and all transactions contemplated by the Plan. Entry of the Confirmation Order shall constitute approval of the Plan Supplement Documents and such transactions and authorization for the Reorganized Debtors and the Debtors, as appropriate, to execute and deliver each of the Plan Documents.

**7.13** **Entry of Final Decree**. Following the Effective Date and the administration of any Administrative Expense Claims, the Reorganized Debtors shall File an application with the Clerk of the Court requesting the entry of a Final Decree closing the Case. After the Effective Date, the Reorganized Debtors shall be responsible only for U.S. Trustee fees owed pursuant to 28 U.S.C. § 1930 arising from Distributions made by the Reorganized Debtors—but not OSK or the Litigation Trust—under the Plan. After the vesting of the Causes of Action in, and payment of the Litigation Trust Fund by OSK to the Litigation Trust, the Litigation Trust shall bear all responsibility for U.S. Trustee fees owed pursuant to 28 U.S.C. § 1930 for any Distributions made by the Litigation Trust until entry of the final decree and closing of the bankruptcy case. Neither

the Reorganized Debtors nor the Litigation Trust shall be responsible for any U.S. Trustee fees after the bankruptcy case is closed.

**7.14** **Retention of Causes of Action and Insurance Claims**.  Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action (including but not limited to, all Avoidance Actions and all D&O Claims), and all claims and causes of action of the Debtors against any insurer or other person in any way related to damage incurred or claims arising from that certain tornado or tornadoes occurring in the Fall of 2019, are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date.  Following the Effective Date and the vesting of the Causes of Action with the Litigation Trust, the Litigation Trust shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action whether arising before or after the Petition Date, including any actions specifically enumerated in any Plan Supplement Document, and the Litigation Trust's rights to commence, prosecute, settle, or otherwise dispose of such Causes of Action shall be preserved.  Upon the Effective Date, and in accordance with the terms and conditions of this Plan, the Litigation Trust shall have all requisite standing and authority to administer the Causes of Action.  The Reorganized Debtors shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, all claims and causes of action of the Debtors against any insurer or other person in any way related to damage incurred or claims arising from that certain tornado or tornadoes occurring in the Fall of 2019, and retain the exclusive right to prosecute, settle, abandon, or otherwise dispose of such claims and causes of action as the case may be in OSK's sole and absolute discretion without further Order of the Bankruptcy Court.

## ARTICLE VIII.
## THE LITIGATION TRUST

**8.1** **Formation of the Litigation Trust**.  On the Effective Date, the Litigation Trust shall be created.  The Litigation Trust shall be governed by the Litigation Trust Agreement, the Plan, and the Confirmation Order.  The terms of the employment of the Litigation Trustee shall be part of the Plan Supplement and approved as part of the Confirmation Hearing.  On the Effective Date, the Debtors shall transfer to the Litigation Trust the following: (a) all Causes of Action, including without limitation the Avoidance Actions and the D&O Claims; and (b) the D&O Insurance Recoveries.  Furthermore, OSK shall pay the Litigation Trust Fund to the Litigation Trust.  All transfers to the Litigation Trust shall be free and clear of all liens, claims, interests, and encumbrances, though OSK shall be entitled to the first Litigation Trust Net Proceeds until it is repaid the full $15,000 of the Litigation Trust Fund.  Except as specifically set forth herein, holders of Allowed Class 3 and Class 7 Claims shall look exclusively to the Litigation Trust for Distributions on their Claims.  For the avoidance of doubt, nothing herein shall be construed to restrict or limit the ability of the Litigation Trustee to assert Causes of Action transferred to the Litigation Trust.  For federal income-tax purposes, the transfer of the Causes of Action and Litigation Trust Fund as set forth herein to the Litigation Trust will be deemed to be a transfer to the holders of Allowed Claims, including Class 3 and 7 Claims (i.e. the Litigation Trust beneficiaries), followed by a deemed transfer by such beneficiaries to the Litigation Trust.

**8.2** **Formation of the Litigation Trust Committee**.  On the Effective Date, the Litigation Trust Committee shall be formed and continue for the purpose of supervising the prosecution of vested Causes of Action and Distribution of Litigation Trust Net Proceeds.  The

Litigation Trust Committee shall consist of Cardinal Health and at most two additional voluntary members chosen—if more than two Holders of Allowed Class 7 Claims seek to join the Litigation Trust Committee—by the size of their Claim, greatest to smallest. If a member of the Litigation Trust Committee resigns or is terminated or unable to serve as a member thereof, then a successor member shall be selected from any remaining voluntary participants, again by size of Claim. Litigation Trust Committee members shall not be compensated for their participation on the Litigation Trust Committee. The Litigation Trust Committee shall continue in existence until such time as either (a) the Litigation Trust Committee deems it appropriate by a majority vote to dissolve itself or (b) all Causes of Action are fully administered by the Litigation Trust and all Litigation Trust Net Proceeds distributed to Litigation Trust Beneficiaries.

  **8.3**  <u>**Approval by the Litigation Trust Committee**</u>. If approval by the Litigation Trust Committee is required by this Plan, and if a dispute arises between the members of the Litigation Trust Committee the precludes the Litigation Trust Committee from making a decision whether to approve or disapprove action required by this Plan, the Litigation Trust Committee members may present the dispute to the Bankruptcy Court, which shall resolve the dispute after prior notice and hearing. In any instance where the Litigation Trust Committee's members petition the Court for approval of any action, such action shall be noticed on the Litigation Trustee, all members of the Litigation Trust Committee, OSK, and the United States Trustee. All disputes between members of the Litigation Trust Committee shall be resolved in accordance with the provisions of the Litigation Trust Agreement.

  **8.4**  <u>**Treatment of the Litigation Trust for Federal Income-Tax Purposes**</u>. The Litigation Trust will be established for the primary purpose of liquidating the Causes of Action and distributing the Litigation Trust Net Proceeds, in accordance with Treas. Reg. § 301.7701-4(d). The Litigation Trust has no objective to continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust. The Litigation Trust will liquidate the Causes of Action and distribute their proceeds in an expeditious but orderly manner, and will make timely Distributions in accordance with the Plan, Confirmation Order, and Litigation Trust Agreement. The Litigation Trust shall not unduly prolong its duration, and shall not be deemed a successor-in-interest of the Debtors for any purpose other than to ensure the Litigation Trust has all requisite authority and standing to pursue the Causes of Action, and as specifically set forth herein or in the Litigation Trust Agreement.

  The Litigation Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income-tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "IRC Code"). If the Litigation Trust shall fails or ceases to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.770194(d), the Litigation Trustee shall take such action as it shall deem appropriate to have the Litigation Trust classified as a partnership for federal-tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IRC Code), including, if necessary, creating or converting it into a Delaware limited partnership or limited liability company that is so classified. For federal income-tax purposes, Litigation Trust Beneficiaries will be treated as the grantors and owners of the Litigation Trust; therefore, they will be responsible for the payment of tax on their respective allocable share of the taxable income of the Litigation Trust.

**8.5** **General Powers of the Litigation Trustee**. Subject to any express limitations, the Litigation Trustee, on behalf of the Litigation Trust, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order and the Litigation Trust Agreement. The Litigation Trustee is authorized to take all such actions that, in its judgment, are necessary and appropriate to liquidate and monetize the Causes of Action, including but not limited to the following:

**8.5.1** **Authority – Causes of Action**. Upon approval by the majority of the Litigation Trust Committee members, but without further approval of the Bankruptcy Court, the Litigation Trustee may assert, prosecute, sell, settle, dismiss, abandon, sell, or otherwise dispose of the Causes of Action for the purpose of liquidating and converting them to Cash, making Distributions, and administering the Assets of the Litigation Trust.

**8.5.2** **Standing to Prosecute Causes of Action**. The Litigation Trustee may participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any legal proceeding, administrative proceeding, arbitrative proceeding or other non-judicial proceeding and litigate Causes of Action on behalf of the Litigation Trust, including without limitation all state and federal causes of action or any other litigation which constitute an Asset of the Litigation Trust and pursue to settlement or judgment such actions. The Litigation Trustee may engage attorneys, advisors, expert witnesses, and employees necessary to prosecute Causes of Action and appropriately administer the Assets of the Litigation Trust, and to otherwise represent the Litigation Trust generally.

**8.5.3** **Management of Litigation Trust Assets**. The Litigation Trustee may open bank accounts, manage cash Assets of the Litigation Trust, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof in, a manner consistent with maintaining the value of and liquidating the Assets of the Litigation Trust for the benefit of its Beneficiaries.

**8.5.4** **Administration of Claims**. The Litigation Trustee shall have standing and authority to dispute, object to, resolve, settle, and otherwise administer all Class 7 Claims prior to issuing Distributions. The Litigation Trustee may hold any unclaimed Distribution or payment to the Holder of an Allowed Class 7 Claim in accordance with this Plan, and my reserve funds pending the resolution of any Disputed Claims that may affect pro-rata Distributions from the Litigation Trust.

**8.5.5** **Payment of Taxes and Dissolution of Litigation Trust**. The Litigation Trustee may pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Litigation Trust. Upon completion of the Litigation Trustee's administration of the Litigation Trust's Assets, the Litigation Trustee may file dissolution/termination documents with the appropriate governmental agencies to dissolve the Litigation Trust.

**8.5.6** **Insurance**. The Litigation Trustee may carry insurance coverage, including insurance to protect the Litigation Trust, the Litigation Trustee, and the Litigation Trust

Committee against claims brought against the Litigation Trust, the Litigation Trustee, or the Litigation Trust Committee acting within such capacities, in amounts as the Litigation Trustee deems advisable. Notwithstanding the above, the Litigation Trustee shall be under no obligation to obtain or carry such insurance.

**8.5.7    D&O Insurance Recoveries**. As of the Effective Date, the Litigation Trust shall have the exclusive right to control the D&O Claims and all D&O Insurance Recoveries, including negotiations relating thereto and settlements thereof.

**8.6    Obligations of the Litigation Trustee**. Notwithstanding anything in this Plan or the Litigation Trust Agreement to the contrary, the Litigation Trustee shall have the following duties to:

**8.6.1    Records and Reporting**. The Litigation Trustee shall prepare and file with the Bankruptcy Court all necessary post-Confirmation quarterly reports in accordance with Bankruptcy Code and applicable regulations. The Litigation Trustee shall also prepare and file semi-annual reports detailing, generally, the status of pending Causes of Action, recoveries associated with Causes of Action, and Distributions made to Litigation Trust Beneficiaries. The Litigation Trustee shall also maintain records and books of account relating to the Litigation Trust's Assets, the management thereof, and all transactions undertaken by the Litigation Trustee on behalf of the Litigation Trust. The Litigation Trustee shall also maintain records and books of account relating to all Litigation Trust Distributions contemplated under the Plan.

**8.6.2    Analysis, Projections, and Reserves**. The Litigation Trustee shall establish and maintain the Disputed Claims Reserve in accordance with the terms of this Plan. The Litigation Trustee shall also analyze or cause to be analyzed all Causes of Action vested in the Litigation Trust and all Claims held by Class 7 Claimants, if not completed prior to the Effective Date. If financially viable and in the best interests of Holders of Allowed Class 3 and Class 7 Claims, the Litigation Trustee shall take all reasonable steps necessary to monetize its Causes of Action. If in the best interest of Holders of Allowed Class 3 and Class 7 Claims, the Litigation Trustee shall object to or otherwise administer Disputed Class 7 Claims. If the Litigation Trustee chooses not to object to a Disputed Class 7 Claim, Cardinal Health shall have standing and authority to do so. The administration of Claims includes the right to prosecute, negotiate and reconcile objections and potential objections to Claims, including litigating, compromising or otherwise resolving such Claim objections, as necessary and appropriate.

**8.6.3    Investigation and Consultation**. The Litigation Trustee shall take such actions as are necessary to prosecute, determine not to prosecute, resolve, compromise, sell, or do with, as appropriate, all Causes of Action. In doing so, the Litigation Trustee shall conduct investigations deemed appropriate by the Litigation Trustee, including, if deemed appropriate, examinations under Rule 2004 of the Federal Rules of Bankruptcy Procedure.

**8.6.4    United States Trustee Fees**. The Litigation Trustee shall issue Distributions of Litigation Trust Net Proceeds to Beneficiaries of the Litigation Trust in accordance with this Plan and the payment priorities of the Bankruptcy Code. The Litigation Trustee shall

be responsible for paying all United States Trustee fees incurred as a result of any Distributions or other disbursements, and shall reserve for and timely pay all United States Trustee Fee obligations arising from the operation and administration of the Litigation Trust, in accordance with the Bankruptcy Code and applicable statutes and regulations.

**8.7** **Resignation/Removal of the Litigation Trustee**. The Litigation Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court by providing same to the Post Confirmation Service List. Any such resignation shall become effective on the earlier to occur of (a) sixty (60) days after the filing date of such notice; and (b) the appointment of a successor Litigation Trustee. The Litigation Trust Committee may remove the Litigation Trustee at its discretion upon unanimous vote of all members without approval of the Bankruptcy Court; *provided*, *however*, that the Litigation Trust Committee shall provide the Litigation Trustee with thirty (30) days written notice of its intent to remove the Litigation Trustee. If the Litigation Trustee believes that its removal is not in the best interests of the Beneficiaries, then the Litigation Trustee may seek Bankruptcy Court approval to continue as Litigation Trustee. If such authority is sought, the Bankruptcy Court shall hear the matter and issue an Order resolving whether the Litigation Trustee shall continue or be replaced, or as is otherwise appropriate under the circumstances. All reasonable fees and expenses incurred by the Litigation Trustee and the Litigation Trust Committee in pursuit of the removal or continuation of the Litigation Trustee shall be paid by the Litigation Trust if the Trust has sufficient cash Reserves.

**8.8** **Appointment of Successor Litigation Trustee**. In the event of the death, resignation or removal of the Litigation Trustee, the Litigation Trust Committee shall designate a successor Litigation Trustee. Any successor Litigation Trustee appointed hereunder shall execute and file with the Bankruptcy Court and serve upon the Post Confirmation Service List a statement accepting such appointment, setting forth the terms of engagement, and agreeing to be bound by the terms of the Plan, Confirmation Order and the Litigation Trust Agreement and upon such filing, the successor Litigation Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Litigation Trustee.

**8.9** **Litigation Trustee Settlement Authority**. The Litigation Trustee shall be authorized to (a) resolve objections to Claims of Class 7 Claimants, (b) enter into settlements of Causes of Action, and (c) otherwise resolve disputes, without notice or further order of the Bankruptcy Court; *provided*, *however*, that, with respect to matters involving more than $100,000 in controversy, the Litigation Trustee must have majority approval of the Litigation Trust Committee.

**8.10** **Bonding of Litigation Trustee**. The Litigation Trustee will not be obligated to obtain a bond but may do so, in its sole discretion, in which case the expense incurred by such bonding will be paid by the Litigation Trust.

**8.11** **Post-Confirmation Operating Reports**. Every three months, beginning on the last business day of the third month anniversary of the Effective Date, or such other date as shall be determined by the Litigation Trustee, the Litigation Trustee shall file a report with the Bankruptcy Court setting forth the assets, liabilities, and activities of the Litigation Trust during the prior three months, including a statement of all amounts paid for compensation of professionals and the Litigation Trustee, and the Litigation Trustee shall serve a copy upon the Post Confirmation Service List.

**8.12** **Payment of Fees and Expenses to the Litigation Trustee.** The Litigation Trustee may employ, without Bankruptcy Court order but only following the approval of the Litigation Trust Committee, professional persons, as such term is used in the Bankruptcy Code, to assist the Litigation Trustee in carrying out duties under this Plan. The Litigation Trustee and its professionals shall be entitled to the payment of their reasonable fees and the reimbursement of their reasonable and necessary expenses incurred in carrying out the Litigation Trustee's duties under the Plan. The Litigation Trustee and its professionals shall be compensated pursuant to their respective terms of engagement for time spent implementing the Plan, the resolution of objections to Disputed Class 7 Claims, and such other actions relating to the administration of the Litigation Trust, without further motion, application, notice, hearing, or other order of the Bankruptcy Court; *provided*, *however*, that such fees and expenses shall be reported to the Litigation Trust Committee, who may assert questions and concerns therewith and, if those questions and concerns are not resolved, the Litigation Trust Committee may, by majority vote of the Litigation Trust Committee, file objections to such fees and expenses with the Bankruptcy Court. All such shall be paid from cash held by the Litigation Trust, if such cash exists.

**8.13** **Operation of the Litigation Trust Committee**. The members of the Litigation Trust Committee shall undertake their duties as specified in the Plan and Litigation Trust Agreement. In serving as a member of the Litigation Trust Committee, such members shall not assume or be deemed to have assumed any liability to any Claimant, Equity Interest Holder, the Debtor, the Litigation Trust, the Litigation Trustee, any Beneficiary of the Litigation Trust, or any other parties-in-interest in the Chapter 11 Case, and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions constituting gross negligence, willful misconduct, or fraud. The Litigation Trust Committee shall have the right to retain counsel or other professionals without further order of the Bankruptcy Court, who shall be paid their reasonable fees and expenses by the Litigation Trust. In addition, the members of the Litigation Trust Committee shall serve without compensation, but shall be entitled to reimbursement from the Litigation Trust of their reasonable expenses incurred in connection with their duties as members of the Litigation Trust Committee. The Bankruptcy Court shall retain jurisdiction to hear any disputes relating to the fees and expenses of the Litigation Trust Committee's professionals, which disputes, if any, shall be resolved by the Bankruptcy Court after notice and hearing. All payments to Litigation Trust Committee professionals and reimbursement of Litigation Trust Committee members' reasonable expenses are contingent on the Litigation Trust's possession of sufficient cash to satisfy those obligations.

**8.14** **Rights and Duties of the Litigation Trust Committee**. The rights and duties of the Litigation Trust Committee are set forth in the Litigation Trust Agreement, and shall include, in pertinent part:

**8.14.1** Review and Consultation. The Litigation Trust Committee shall have the right to review and consult with the Litigation Trustee regarding the prosecution, abandonment, settlement, or release of any objections to Disputed Claims, or Causes of Action, and otherwise with regard to the administration of the Litigation Trust.

**8.14.2** Settlement Consent. The Litigation Trust Committee shall have the right to approve or disapprove, by prior majority vote, of any action of the Litigation Trustee affecting the Litigation Trust or Litigation Trust Assets with an amount in controversy of $100,000 or greater.

**8.14.3**  Right of Removal and Appointment.  The Litigation Trust Committee shall be vested with authority to remove the Litigation Trustee, or any successor Litigation Trustee, appointed pursuant to this Plan and the Litigation Trust Agreement, and to appoint a successor Litigation Trustee should the Litigation Trustee be removed, resign, or become incapacitated.

**8.15**  **Approval by the Litigation Trust Committee**.  If the Litigation Trustee cannot obtain approval of a majority of the Litigation Trust Committee members to act under the Plan and Litigation Trust Agreement, the Litigation Trustee may petition the Bankruptcy Court for approval of same so long as the Chapter 11 Case remains open, and after the Chapter 11 Case is closed, the Litigation Trustee may petition any court of competent jurisdiction for such approval.  In any instance where the Litigation Trustee petitions any court for approval of any action, such action shall be noticed on all members of the Litigation Trust Committee and the Debtor.  In any instance where the approval of an action of the Litigation Trustee by the Litigation Trust Committee involves a Claim or Cause of Action against a member of the Litigation Trust Committee or any other instance where a particular member of the Litigation Trust Committee has a conflict of interest as to a particular decision to be approved by the Litigation Trust Committee, such member shall not be eligible to vote on such action, and in the event of any disagreement between the remaining members of the Litigation Trust Committee resulting in a tie vote of the remaining members of the Litigation Trust Committee, the Litigation Trustee's decision shall control.

**8.16**  **Establishment of Disputed Claim Reserve**.  The Litigation Trustee shall establish a reserve account in which an amount of Cash is held by the Litigation Trustee in reserve for Litigation Trust Expenses and, in the reasonable discretion of the Litigation Trustee, amounts that are or are expected to become due and owing by the Litigation Trust following the Effective Date, including without limitation amounts that may become payable on account of United States Trustee fees and Disputed Claims, and any expenses that, in the reasonable discretion of the Litigation Trustee, are likely to become Litigation Trust Expenses, including, without limitation, (a) any litigation expenses, and reasonable legal fees related thereto, of the Litigation Trust or Litigation Trustee; (b) funds that the Litigation Trust is holding as Unclaimed Property; and (c) the costs of filing tax returns and other reports that the Litigation Trustee may be required to file.

**8.17**  **Investments**.  All Cash held by the Litigation Trust in any account or otherwise shall be deposited or invested in accordance with § 345 of the Bankruptcy Code or as otherwise permitted by this Plan, the Confirmation Order, or other Final Order of the Bankruptcy Court, and that such account shall be held for the benefit of Litigation Trust Beneficiaries.

**8.18**  **Limitation on Liability of Litigation Trustee and Litigation Trust Committee Members**.  The Litigation Trustee and Litigation Trust Committee members shall not be liable or otherwise responsible in any manner whatsoever for any act or omission of any kind or character, in any capacity, to any Claimant, Equity Interest holder, Person, party in interest, or any third party, in any way related to the implementation of the Plan or administration of the Litigation Trust with the sole exception being for specific acts or omissions determined by Final Order to arise solely from gross negligence, willful misconduct, or fraud.

**8.19**  **Indemnification of Litigation Entities**.  The Litigation Trust shall indemnify and hold harmless the Litigation Trustee and Litigation Trust Committee members from and against and in respect to any and all liabilities, losses, damages, claims, causes of action, costs and expenses in connection with any action, suit, proceeding, or investigation brought by or threatened

against the Litigation Trustee or Litigation Trust Committee members, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, *provided*, *however*, that no such indemnification will be made for such actions or omissions of the Litigation Trustee or Litigation Trust Committee members solely as a result of gross negligence, willful misconduct, or fraud as determined by Final Order.

**8.20** **Retention of Rights to Pursue Causes of Action and Effectuate Setoffs, Recoupments, Etc.**. Except as otherwise ordered by the Bankruptcy Court OR AS SPECIFICALLY AND EXPLICITLY PROVIDED in the Plan, all Causes of Action (including but not limited to, all Avoidance Actions and the D&O Claims) shall be preserved by the Debtors under this Plan for the benefit of the Litigation Trust and, in addition all claims and causes of action of the Debtors against any insurer or other person in any way related to damage incurred or claims arising from that certain tornado or tornadoes occurring in the Fall of 2019 shall also be preserved for the sole benefit of the Reorganized Debtors. Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Litigation Trustee (as a representative of the Debtor) shall retain and have the exclusive authority and standing to prosecute, enforce, pursue, sue on, settle or compromise any and all Causes of Action as defined in this Plan (including Avoidance Actions), other than all claims and causes of action of the Debtors against any insurer or other person in any way related to damage incurred or claims arising from that certain tornado or tornadoes occurring in the Fall of 2019 which shall remain in the possession of the Reorganized Debtors. The Causes of Action retained include, without limitation, all Claims and Causes of Action listed or referenced in the Disclosure Statement or in any Plan Document. ALL PARTIES SHOULD READ THE DISCLOSURE STATEMENT PROVISIONS CONCERNING PRESERVED CAUSES OF ACTION.

The Litigation Trustee (as the Debtors' / Estates' representative) shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by the Debtors against or with respect to all Claims asserted against the Debtors or property of the Estates, with the exception of all defenses, counterclaims, and rights that have been asserted or could be asserted by the Debtors with respect to all claims and causes of action of the Debtors against any insurer or other person in any way related to damage incurred or claims arising from that certain tornado or tornadoes occurring in the Fall of 2019, which shall be retained by the Reorganized Debtors. No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by the Debtors' failure to identify such property in the Debtors' Schedules or the Disclosure Statement accompanying the Plan. The Debtors and the Litigation Trustee will continue to review payments made by and transactions involving the Debtors prior to the Petition Date to determine whether actions to avoid such payments and transactions should be brought. Failure to specifically identify potential actions in the Plan shall not be deemed a waiver of any such action by the Debtors or any other party.

**8.21** **Cooperation and Access to Books and Records**. The Reorganized Debtors shall provide the Litigation Trustee with reasonable access to all relevant books and records so as to enable the Litigation Trustee to carry out its duties.

## ARTICLE IX.
## DISTRIBUTIONS UNDER THE PLAN

**9.1** **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, Distributions issued

by the Reorganized Debtors or the Litigation Trust under this Plan will be made by mail at (a) the address of each such beneficiary of the Distribution as set forth on the proofs of Claim filed by such Claimant or in the Debtors' records; (b) the address set forth in any written notice of address change filed with the Bankruptcy Court and delivered to the Debtors and the Litigation Trustee in writing after the date of any related proof of Claim; (c) the address reflected in the Schedules if no proof of Claim is filed and the Debtors has not received a written notice of address change; or (d) the address delivered by any Claimant to the appropriate entity before the distribution to that Claimant has been made. If any distribution is returned as undeliverable, no further Distributions to such Claimant will be made unless and until appropriate entity (the Reorganized Debtor or Litigation Trustee as the case may be) is notified in writing of such Claimant's then-current address within ninety (90) days of the date on which the attempted distribution was mailed. After the expiration of the ninety (90) says, the undeliverable distribution shall become an Unclaimed Distribution.

9.2 **Unclaimed Distributions and Uncashed Checks**. Unclaimed Distributions shall be held in reserve for the benefit of Claimants. All claims for undeliverable Distributions must be made by the ninetieth (90th) day following the date on which delivery the Distribution was initially mailed. The Claim on which an undelivered or unclaimed Distribution was made shall be treated as a Disputed Claim until such 90-day period has passed, and if no party contacts the Litigation Trustee in writing to seek payment of such Claim within the 90-day period, then such Claim shall be treated as Disallowed in full by Final Order of the Bankruptcy Court. After expiration of the 90-day period, the Unclaimed Distribution will revert to the distributing entity (the Reorganized Debtors or Litigation Trust as the case may be) for deposit to be reallocated and distributed to the Holders of Allowed Claims, and the Claim of any Holder with respect to such an Unclaimed Distribution will be released and forever barred. Checks issued to Holders of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and such Holder will forfeit its right to such distribution. In no event shall any funds escheat to the State of Texas.

9.3 **Due Authorization by Claimants**. Every Claimant who elects to participate in the distributions provided for herein warrants that the Claimant is authorized to accept in consideration of its Claim against the Debtors the distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Claimant under this Plan.

9.4 **Setoffs**. Except as otherwise expressly provided in the Plan and pursuant to §§ 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Litigation Trustee or the Reorganized Debtors, as the case may be, may set off against any distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights or Causes of Action held by the Debtors against the Holder of the Allowed Claim, or in relation to the Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any such claims, rights or Causes of Action. If the Debtors fails to set off against a Claim and seek to collect from the Holder of such Claim after Distribution to that Holder pursuant to the Plan, the Debtors shall be entitled to full recovery on the claims of the Debtors or the Estates, if any, against the Holder of such Claim.

**9.5** **Additional Charges**. Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no distribution shall be made to Holders of Equity Interests until the principal amount of all Allowed Claims is paid in full.

**9.6** **Compliance with Tax Requirements**. In connection with the Plan, the Debtors and the Litigation Trustee shall comply with all withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**9.7** **De Minimis Distributions**. Ratable Distributions to Holders of Allowed Claims will not be made if such Distribution will result in a Distribution amount of less than $100.00, unless a request therefore is made in writing to the Debtor.

**9.8** **Rounding**. Where the calculation of a Distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1** **Assumption of Executory Contracts and Unexpired Leases**. Except as otherwise provided herein or in any order of the Bankruptcy Court, on the Effective Date every Executory Contract identified on the attached Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed Assumed upon the payment of the cure amount identified in that Schedule. The Debtors/Reorganized Debtors reserve the right to modify the treatment of an Executory Contract pursuant to this Plan. If a contract party objects to the treatment proposed in the Schedule of Assumed Executory Contracts, it must file an objection to this Plan or otherwise waives its right to object and shall be deemed to have consented to the assumption as proposed herein. Each Executory Contract on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be assumed only to the extent that it constitutes an executory contract or unexpired lease as contemplated by § 365 of the Bankruptcy Code. Nothing contained in this Plan constitutes an admission by the Debtor that any such contracts or leases are "executory" or that the Debtors have any liability thereunder. Further, such assumption is subject to the same rights that the Debtors held or hold on or after the Petition Date to modify or terminate such agreement(s) under applicable non-bankruptcy law. Each Executory Contract assumed pursuant to this section shall be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law. The Reorganized Debtors shall have until April 24, 2020 to determine whether to assume or reject other Executory Contracts not identified on the attached Schedule of Assumed Executory Contracts and Unexpired Leases, notwithstanding any provisions of § 365 of the Bankruptcy Code. Following Confirmation, the Reorganized Debtors may assume said contracts only after filing a Notice of Intent to Assume Executory Contract with the Bankruptcy Court and providing notice and a copy of that pleading to the contract party. That pleading shall include a proposed cure amount, if any, and the proposed timing for the satisfaction of that cure amount. Reorganized Debtors must also provide the contract party with adequate assurance of future performance as required under § 365 of the Bankruptcy Code. If the contract party objects to the proposed cure or adequate assurance of future performance, it may file an

objection to the Reorganized Debtors' Notice of Intent to Assume Executory Contract, and shall be entitled to a hearing and Order of the Bankruptcy Court to resolve the dispute.

**10.2** **Payments Related to Assumption of Executory Contracts**. If not the subject of *bona- fide* dispute pursuant to this Article as of Confirmation, monetary defaults, if any, under each Executory Contract to be assumed under the Plan shall be satisfied by the Reorganized Debtor pursuant to § 365(b)(1) by payment in Cash of the amount set forth in the Cure Amounts identified on the Schedule of Assumed Executory Contracts and Unexpired Leases or such other amount as ordered by the Bankruptcy Court or agreed to by the parties on or as soon after the Effective Date as practicable or on such other terms as agreed to by the parties to such Executory Contract. In the event of a *bona-fide* dispute pursuant to this Article, payment of the amount otherwise payable hereunder shall be made following entry of a Final Order or agreement by the Debtor and the party to the Executory Contract.

**10.3** **Claims Based on Rejection of Executory Contracts of Unexpired Leases**. Any Claim for damages arising from the rejection of an executory contract or unexpired lease pursuant to the Plan must be asserted in a proof of Claim filed with the Bankruptcy Court not later than thirty (30) days after the date on which the Executory Contract was rejected or deemed rejected. The Claim must be concurrently served on the Litigation Trustee, and if Allowed, the Claimant shall have a Class 7 General Unsecured Claim payable solely from Litigation Net Proceeds in accordance with the terms and conditions of this Plan. Any such rejection Claims not timely filed shall be released and forever barred from assertion against the Litigation Trust. Any other bar date previously established for the filing of Claims based on the rejection of executory contracts or unexpired leases shall not be affected by this provision.

## ARTICLE XI.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**11.1** **Objections to Claims**. Following the Effective Date, an objection to the allowance of any Claim shall be in writing and may only be filed by (i) the Litigation Trustee if the Claim is a Class 7 Claim, or (ii) the Reorganized Debtor if the Claim is a Class 1 or Unclassified Claim, at any time on or before the Claims Objection Deadline. Any Disputed Claim as to which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

**11.1.1** Alternative Standing. Notwithstanding the foregoing, any party in interest that otherwise would have standing to object to a Claim absent the provisions of this Plan, may, on or before the Claims Objection Deadline, file a motion with the Bankruptcy Court requesting standing to so object on the basis that an advance, written demand has been made by the movant on the Litigation Trustee to object to the Claim, and that said Litigation Trustee has unjustifiably refused or failed to respond. Any such motion filed by the Claims Objection Deadline shall, if granted, toll the Claims Objection Deadline solely with respect to the Claim which is the subject of the motion, until and including the date which is ten (10) business days following the date of entry of the Bankruptcy Court's order on the motion.

**11.2** **Contingent Claims**. Until a Contingent Claim becomes an Allowed Claim or is

Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan. The Holder of a Contingent Claim will be entitled to a Distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtors on a Claim of a Claimant is Disallowed as of the Effective Date if: (a) that Claimant's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Claimant under § 509 of the Bankruptcy Code.

**11.3** **Post-Confirmation Proofs of Claim and Amendments**. Except as otherwise expressly contemplated by the Plan, following the later of the Effective Date and the applicable Bar Date, no original or amended proof of Claim may be filed in the Chapter 11 Case to assert a Claim against the Debtors or their Estates without prior authorization of the Bankruptcy Court, and any such proof of Claim that is filed without such authorization shall be deemed null, void and of no force or effect; *provided*, *however*, that the Holder of a Claim that has been evidenced in the Chapter 11 Case by the filing of a proof of Claim on or before the Bar Date shall be permitted to file an amended proof of Claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

**11.4** **Settlement of Disputed Claims**. From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and § 105(a) of the Bankruptcy Code, and Section 11.1 of this Plan, the Reorganized Debtors and Litigation Trustee shall be entitled to compromise and settle objections to Disputed Claims as set forth below:

**11.4.1** Amount in Controversy Less than $100,000. If the amount in controversy of a Disputed Claim is less than $100,000.00, the Reorganized Debtors or Litigation Trustee as the case may be will be authorized and empowered to settle its objection to such Disputed Claim and execute the necessary documents, including a stipulation of settlement or release, with no further approval of or notice to the Bankruptcy Court.

**11.4.2** Amount in Controversy Greater than $100,000. If the amount in controversy of a Disputed Claim is greater than $100,000.00, the Reorganized Debtors or Litigation Trustee as the case may be shall be authorized and empowered to settle its objection to such Disputed Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fourteen (14) days' notice filed with the Bankruptcy Court. If no objection to the proposed settlement of the Disputed Claim is filed within that fourteen-day time period or if any objecting party withdraws its objection to such settlement for any reason, the Reorganized Debtors or Litigation Trustee, as the case may be, may enter into the proposed settlement without further notice, and without the necessity of a motion hearing or order of the Bankruptcy Court. If a party objects to the proposed settlement and the proponent is unable to resolve the objection, the Bankruptcy Court shall set the matter for hearing applying the settlement guidelines of Bankruptcy Rule 9019 and, following the hearing, shall enter an Order resolving the dispute.

## ARTICLE XII.
## CONDITIONS PRECEDENT

**12.1** **Conditions Precedent to Confirmation**. Confirmation of the Plan shall occur upon the satisfaction of the following conditions: (a) the Clerk of the Bankruptcy Court shall have

entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to § 1125 of the Bankruptcy Code, (ii) authorizing solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (v) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (vi) approving the Plan Documents, and (vii) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents; and (b) the Confirmation Order, the Plan Documents, and the Plan are each in a form satisfactory to OSK and the Debtors.

**12.2    Conditions Precedent to the Effective Date**.  The Effective Date shall occur upon the satisfaction of the following conditions: (a) the Bankruptcy Court has approved the Plan and entered the Confirmation Order, the Confirmation Order has become a Final Order, and it authorizes OSK, the Debtors, and Reorganized Debtors to take all actions necessary or appropriate to implement and consummate the provisions of and transactions described in or contemplated in the Plan; (b) all documents effectuating the Plan and the transactions hereunder have been executed and delivered by the parties thereto including the OSK Secured Term Note and Litigation Trust Agreement, and all conditions to the effectiveness of such documents have been satisfied or waived as provided therein; (c) the Litigation Trust has been formed and vested with all Causes of Action; OSK has satisfied the Class 2 Claim, its obligations to Cardinal Health under its Class 4 Claim, and capitalized the Litigation Trust with the Litigation Trust Fund; (d) OSK has capitalized the Reorganized Debtors; (e) the Reorganized Debtors have issued new equity as necessary to ensure that OSK is the sole direct and indirect owner of the Reorganized Debtors; and (f) the Debtors have secured a tail policy for the D&O Liability Insurance Policies for a term of not less than two (2) years, unless Cardinal Health fails to timely fund the Tail Policy Fund.

### ARTICLE XIII.
### EFFECTS OF CONFIRMATION

**13.1    Binding Effect**.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted the Plan.

**13.2    Discharge of Claims and Termination of Interests**.  Upon the Effective Date, and in consideration of the Distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each Holder of a Claim or Interest and any successor, assign, or affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in the Plan, upon the Effective Date, all such Holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to §§ 105, 524, and 1141 of the Bankruptcy Code, from asserting any such discharged Claim against or terminated Interest in the Debtors or Reorganized Debtors.

**13.3**    **Release by the Debtors**.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and any related documents, for good and valuable consideration, including the contributions and services beneficial to the Debtors' reorganization, the adequacy of which is hereby confirmed, and except as otherwise expressly provided in the Plan or the Confirmation Order, as an integral component of this Plan, the Debtors' professionals, Stewart Edington, Shumit Patel, Cardinal Health, its employees, representatives, and its professionals, and OSK, its employees, representatives, and its professionals (collectively the **"Released Parties"**) are deemed forever released and discharged by the Debtors, the Reorganized Debtors, the Litigation Trust, and the Estates from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, the Reorganized Debtor, the Litigation Trust or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Litigation Trust, or the Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or related to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the subject matter of or the transactions or events giving rise or related to, any Claim or Interest that is treated in this Plan, the Debtors' businesses, contractual arrangements between the Debtors and any Released Party, the Restructuring, the restructuring of any Claim before or during the Chapter 11 Cases, the Disclosure Statement, this Plan, the Plan Support Documents, and the negotiation, formulation, or preparation thereof or the terms therein, the solicitation of votes with respect to this Plan, or any act or omission, other than Claims or Causes of Action (including but not limited to, all Avoidance Actions and all claims against the Debtors' current or former officers, managers, members, or directors) arising out of or related to any act or omission of a Released Party that is a criminal act, willful misconduct, or fraudulent.

**13.4**    **Release – Post-Petition Acts**.  On the Effective Date, the Released Parties, the Injunction Beneficiaries (as defined below), and the Plan Indemnification Parties (as defined below) shall be unconditionally and are hereby deemed to be unconditionally released from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way related to the Debtors, the Chapter 11 Cases, any property of the Debtors, the business or operations of the Debtors, the Reorganized Debtors, the Plan and any related document, or any of the transactions contemplated thereby, other than any liability found by a court of competent jurisdiction to have resulted from fraud, willful misconduct, or criminal act of any such party.

**13.5**    **Release – Certain Officers**.  Released Parties Stewart Edington and Shumit Patel shall be unconditionally and are hereby deemed to be unconditionally released from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act or omission, transaction, event or other occurrence taking place prior to the Petition Date, which is in any way related to the Debtors, any property of the Debtors, the business or operations

of the Debtors, other than any liability found by a court of competent jurisdiction to have resulted from fraud, willful misconduct, or criminal act of any such party. Such specific releases shall be without prejudice to the Litigation Trust's rights to assert Causes of Action against any other current or former officer, manager, member, or director of the Debtors. For purposes of clarification, this Section 13.5 shall not effectuate a release of any Causes of Action against any individuals other than Released Parties Stewart Edington and Shumit Patel.

**13.6    Good Faith and Protection of Certain Parties in Interest**.   The respective officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents of the Debtors, Cardinal Health, and OSK act or have acted in good faith, and will not be liable to any Holder of a Claim or Equity Interest, or other party with respect to any action, forbearance from action, decision, strategy, position, or exercise of discretion in connection with the following (collectively, the "**Post-Petition/Plan Conduct**"): (a) the ordinary course of business operations of the Debtors after the Petition Date; (b) the proposal or implementation of any of the transactions provided for or contemplated in the Plan or any related document; or (c) the administration of the Plan or the assets and property to be distributed pursuant to the Plan other than for fraud, willful misconduct, or criminal acts.  The Debtors, Cardinal Health, OSK, and their respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors, Cardinal Health, and OSK, respectively, and such reliance will constitute evidence of good faith regarding the Post-Petition/Plan Conduct.  In an action, suit, or proceeding by a Holder of a Claim or Equity Interest or other party in interest contesting any action by or non-action of the Debtors, Cardinal Health, or OSK or their respective representatives, attorneys, financial advisors, or agents, regarding the Post-Petition/Plan Conduct, the successful party is entitled to recover reasonable attorneys' fees and expenses in addition to any other available remedy.  Such specific releases shall be without prejudice to the Litigation Trust's rights to assert Causes of Action against any other current or former officer, manager, member, or director of the Debtors.  For purposes of clarification, this Section 13.6 shall not effectuate a release of any Causes of Action other than those that arise out of or relate to Post-Petition/Plan Conduct.

**13.7    Injunction**.  Except as otherwise provided in the Plan or the Confirmation Order, from and after the Confirmation Date, all Persons, Entities, Holders of Claims, and Holders of Equity Interests against and in the Debtors are permanently restrained and enjoined from taking any of the following actions against the (a) Assets; (b) the Released Parties; (c) the Litigation Trust, the Litigation Trustee and any Litigation Trust professionals, representatives, or employees; (d) the Litigation Trust Committee and any of its members and their professionals, representatives and employees; and (e) the D&O Liability Insurance Policies and D&O Liability Insurance Recoveries (collectively the "**Injunction Beneficiaries**") on account of any such Claims or Equity Interests: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, or Equity Interest against the Injunction Beneficiaries, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Injunction Beneficiaries; (iii) creating, perfecting, or enforcing any encumbrance, security interest, or Lien of any kind against the Injunction Beneficiaries; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against (x) any obligation due the Debtors or the Litigation Trust, (y) the Assets, or (z) the Injunction Beneficiaries; (v) performing any act, in any manner, in any place

whatsoever, that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; and (vi) assert any right to damages or compensation, cause of action, liability, or right against any of the Injunction Beneficiaries; *provided, however*, that (a) each Holder of a Disputed Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all Holders of Claims shall be entitled to enforce their rights under the Plan, and any agreements executed or delivered pursuant to or in connection with the Plan and (b) the Litigation Trust shall be permitted to assert Causes of Action, including the D&O Claims, relating to the D&O Liability Insurance Policies and D&O Insurance Recoveries. If allowed by the Bankruptcy Court, any Injunction Beneficiary injured by any willful violation of such injunction shall recover actual damages, including, without limitation, costs and attorneys' fees and experts' fees and disbursements and, in appropriate circumstances, may recover punitive damages. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays imposed by the Bankruptcy Code under §§ 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect with respect to the Debtors until the Effective Date.

**13.8** **Litigation Trust Plan Indemnification**. The Litigation Trust shall indemnify and hold harmless the Litigation Trustee and each member of the Litigation Trust Committee (the "**Litigation Trust Indemnified Parties**") from and against and in respect to any and all liabilities, losses, damages, claims, causes of action, costs and expenses in connection with any action, suit, proceeding, or investigation brought or threatened against any Litigation Trust Indemnified Party and related to that Indemnified Party's performance of its duties and obligations under the Plan, *provided, however*, that no such indemnification will be made for any actions or omissions of any Indemnified Party as a result of that Indemnified Party's gross negligence, willful misconduct, criminal act, or fraud as determined by a Final Order. The Litigation Trust shall be reimbursed for any indemnification payments by Litigation Trust Net Proceeds. Importantly, when making distributions to creditors, professionals, or as otherwise provided in this Plan or the Litigation Trust Agreement, the Litigation Trust and the Litigation Trustee shall not refrain from making or delay any distributions or in any manner reserve for potential future claims related directly or indirectly to the indemnification set forth in this paragraph. If no claim for indemnification from any Indemnified Party has been asserted against the Litigation Trust at the time Litigation Trust Net Proceeds are paid to the Litigation Trust, the Litigation Trust shall have no obligation to reserve any funds against any unknown or potential yet unasserted indemnification claim.

**13.9** **Insurance**. Except as otherwise expressly provided in this Plan, confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtors in which the Debtors are or was the insured party, unless OSK directs the Reorganized Debtors to reject or otherwise terminate any insurance policy. Each insurance company is prohibited from – and the Confirmation Order shall include an injunction against – denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Cases or the Plan, unless said policy is rejected or otherwise terminated hereunder. For the avoidance of doubt, regardless of the forgoing, none of the D&O Liability Insurance Policies shall be rejected by the Debtors and such policies shall be assumed, assigned, transferred and conveyed as provided under Section 7.8 of this Plan.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

**14.1** **Retention of Jurisdiction**. Notwithstanding entry of the Confirmation Order, or the entry of a final decree, with respect to the Chapter 11 Case, or any of them, the Bankruptcy Court shall retain jurisdiction from and after the Effective Date, to the fullest extent legally permitted, over the Chapter 11 Cases, all proceedings arising under, arising in or related to the Chapter 11 Cases, the Confirmation Order and the Plan including, without limitation, jurisdiction to:

**14.1.1** Determine (a) any Disputed Claims, Disputed Equity Interests and all related Claims remaining in controversy or otherwise Disputed after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (b) the validity, extent, priority, and avoidability and nonavoidability of consensual and nonconsensual Liens and other encumbrances, (c) pre-confirmation tax liability pursuant to § 505 of the Bankruptcy Code, and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

**14.1.2** Allow, disallow, estimate, liquidate or determine any Claim or Equity Interest against or in the Debtors and to enter or enforce any Order requiring the filing of any such Claim or Equity Interest before a particular date;

**14.1.3** Determine / Approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtors pursuant to § 365 of the Bankruptcy Code and the Plan;

**14.1.4** Determine any request for payment of a potential Administrative Expense Claim, including compensation of parties entitled thereto, or fees and reimbursements to the Debtors;

**14.1.5** Resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim was filed or whether a Disallowed Claim or Disallowed Equity Interest should be reinstated;

**14.1.6** Implement the provisions of the Plan and enter Orders and injunctions in aid of confirmation and consummation of the Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

**14.1.7** Issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan (including all exculpations and injunctions), any Plan Document, the Plan Supplement, or any transaction contemplated under any of the foregoing, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

**14.1.8** Determine issues relating to the garnishment of any Distributions payable under the terms of the Plan;

**14.1.9**  Modify the Plan pursuant to § 1127 of the Bankruptcy Code;

**14.1.10** Preside over and adjudicate any and all Causes of Action that arose prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date;

**14.1.11** Resolve disputes concerning any reserves with respect to Disputed Claims and Disputed Equity Interests or the administration thereof;

**14.1.12** Resolve any disputes concerning whether a person or entity had sufficient notice of the Chapter 11 Cases, any applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is barred hereunder or for any other purpose;

**14.1.13** Preside over and determine any and all applications, claims, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Equity Interests) in the Chapter 11 Cases;

**14.1.14** Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**14.1.15** Seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

**14.1.16** Consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**14.1.17** Recover all assets of the Debtors and property of the Estates, wherever located;

**14.1.18** Resolve any dispute relating to the approval and payment of the fees and expenses of the Debtors, or the Litigation Trust, Litigation Trust Committee or their respective professionals;

**14.1.19** Resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

**14.1.20** Hear any other matter not inconsistent with the Bankruptcy Code;

**14.1.21** Resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**14.1.22** Enforce any injunctions granted under the Plan;

**14.1.23** Approve settlements relating to any of the above;

**14.1.24** Determine any and all motions, applications, adversary proceedings, contested or litigated matters, including Causes of Action initiated by, against, or otherwise involving the Debtors, the Litigation Trustee, the Litigation Trust, or the Litigation Trust Committee;

**14.1.25** Hear and determine all matters necessary to enforce the rights, remedies, and obligations reserved for the Debtors, the Litigation Trustee, Litigation Trust, or Litigation Trust Committee in the Plan, the Plan Documents, the Plan Supplement, the Confirmation Order, or the Litigation Trust Agreement, including interpreting any provision of any of the foregoing; and

**14.1.26** Enter a final decree and order concluding, closing, or terminating the Chapter 11 Cases.

**14.2** __Limitation on Jurisdiction and Authority__.  In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334 or authority to enter final judgments beyond that provided by applicable law, including the Constitution of the United States.

**14.3** __No New Requirements__.  The grant of jurisdiction to the Bankruptcy Court herein over a matter or issue does not mean that Bankruptcy Court approval is required for such matters or issues, nor does it otherwise affect the substantive legal requirements or the requirements in any agreement pertaining to such matters or issues.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

**15.1** __Authorization__.  The Debtors, Reorganized Debtors, OSK, and the Litigation Trustee after the Effective Date, shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**15.2** __Amendment of the Plan__.  The Proponents reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date.  After the Effective Date, the Reorganized Debtors may, on order of the Bankruptcy Court, amend or modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

**15.3** __Non-Confirmation of the Plan__.  The Proponents reserve the right to withdraw this Plan at any time prior to the Confirmation Date.  If the Proponents withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estates, or any other Person.

**15.4** __Filing of Additional Documentation__.  On or before the Effective Date, the Proponents may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of

this Plan.

**15.5    Governing Law**.  Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

**15.6    Headings**.  Each heading preceding an article, section or paragraph of the Plan is inserted for convenience only and shall not affect interpretation or construction of the Plan.

**15.7    Severability**.  Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan.  If any term or provision of the Plan is of such a character as to deny Confirmation, the Proponents reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**15.8    All Claims and Equity Interests**.  The Plan is intended to deal with all Claims of whatever character whether or not Disputed, contingent, or liquidated and whether or not Allowed by the Bankruptcy Court under § 502 of the Bankruptcy Code against and Equity Interests in the Debtor.  However, only those Claims and Equity Interests Allowed shall be entitled to receive the treatment afforded by the Plan.

**15.9    Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply unless otherwise set forth in the Plan or determined by the Bankruptcy Court.

**15.10   Section 1125(e) Good-Faith Compliance**.  The Proponents and their respective representatives and professionals shall be deemed to have acted in "good faith" under § 1125(e) of the Bankruptcy Code.

**15.11   No Stay of Confirmation Order**.  The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including Bankruptcy Rules 3020(e) and 7062.

**15.12   Notices**.  Any notice required to be given under this Plan shall be in writing and, except for a notice of change of address, shall be considered complete on the earlier of: (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Entities on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Entities on the Post-Confirmation Service List as such Service List is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-

Confirmation Service List. Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, or, if after the Effective Date, the Reorganized Debtors and the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, to:

| Debtor: | With copies to: |
|---|---|
| Dougherty's Holdings, Inc. et al. | Brandon J. Tittle |
| | Gerrit M. Pronske |
| | 2701 Dallas Parkway, Ste. 590 |
| | Plano, TX 75093 |
| | |
| OSK: | John J. Kane |
| | Kyle Woodard |
| | Kane Russell Coleman Logan PC |
| | 901 Main St., Ste. 5200 |
| | Dallas, TX 75202 |
| | |
| Cardinal Health: | Mark H. Ralston |
| | Fishman Jackson Ronquillo PLLC |
| | Three Galleria Tower |
| | 13155 Noel Road, Suite 700 |
| | Dallas, TX 75240 |
| | |
| | Scott A. Zuber |
| | Chiesa Shahinian & Giantomasi PC |
| | One Boland Drive |
| | West Orange, NJ  07052 |
| | |
| United States Trustee: | Nancy Sue Resnick |
| | Attorney |
| | Office of the U.S. Trustee |
| | 1100 Commerce Street |
| | Room 976 |
| | Dallas Texas 75242 |
| | 214-767-1088 direct |
| | 214-767-8967 |

**15.13  U.S. Trustee Fees**.  After the Effective Date, the Reorganized Debtors will pay United States Trustee fees for all disbursements made by the Debtors through the completion of (i) the Reorganized Debtors administration of all Disputed unclassified and Class 1 Claims, and (ii) the completion of the Reorganized Debtors' assumption or rejection of executory contracts and unexpired leases.  Upon the completion of those two events, the Reorganized Debtors shall have satisfied all of its obligations under the Plan.  The Chapter 11 Cases shall remain open for the sole benefit of the Litigation Trust and its administration of all other remaining claims.  The Litigation Trust shall bear all responsibility for disbursements made from the Litigation Trust, and shall be

obligated to remit payments to the United States Trustee for all such disbursements in accordance with the Bankruptcy Code and applicable statutes and regulations. After the Effective Date, the Debtors shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Litigation Trustee shall pay post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered and the Chapter 11 Cases are closed.

**15.14   Confirmation Order.**  The Confirmation Order shall provide that unless expressly provided therein or by incorporation of this Plan, the Confirmation Order does not modify, alter or supersede any order of the Bankruptcy Court entered in the Bankruptcy Case.

Dated: February 12, 2020                              Respectfully submitted by:


By: */s/ Brandon J. Tittle*
Brandon J. Tittle (TX Bar No. 24090436)
Gerrit M. Pronske (TX Bar No. 16351640)
**PRONSKE & KATHMAN, P.C**
2701 Dallas Parkway, Ste. 590
Plano, TX 75093

**ATTORNEYS FOR THE DEBTORS
AND DEBTOR-IN-POSSESSION**


By: */s/ John J. Kane*
John J. Kane (TX 20466794)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main St., Ste. 5200
Dallas, TX 75202

**ATTORNEYS FOR OSK VII, LLC**